## Odiorne's Appeal.

1. Where a wife leaves her husband and renounces all conjugal intercourse a considerable time before his death, she is not such a widow on his death as is contemplated by the acts entitling her to administer his estate and to receive the $300.

2. The acts contemplate a wife who lives with her husband till his death and faithfully performs all her duties to his family, not one who voluntarily separates herself from him and performs none of those duties.

3. Such a widow is not in a position to object that administration on her husband's estate was granted to one out of the state.

January 25th 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., at Nisi Prius.

Appeal from the decree of the Register's Court of *Chester county*, confirming the decree of the register in the grant of administration on the estate of John W. Odiorne, deceased.

The register granted administration on the 30th of October 1866, to David W. Odiorne, a brother of the decedent and resident of New York, against the consent of Annie I. Odiorne, his widow, and she appealed to the Register's Court. Administration was granted to her in Philadelphia on the 31st of October.

The decedent and Annie Isadore Robbins, both residing in Philadelphia, were married there on the 17th of August 1861.

After the marriage he followed his business of photographer in that city. His business being dull, he moved to West Chester, Chester county, in July 1865. There was some evidence of his intention to return to Philadelphia. He was not successful in West Chester, and his means became greatly straitened. Their life together did not appear to be very happy ; they had quarrels, and

[Odiorne's Appeal.]

she finally (about July 1866) left home and went to Detroit, to follow the occupation of an actress.

On the 17th of July 1866, the decedent wrote to his wife acknowledging the receipt of a letter from her of the 14th, expressing much interest in her, and wishes for her success and advising her as to her deportment; he concludes: " I hope when this reaches you that you will be permanently settled, that is as long as you stay in Detroit; then I can write often, and not wait always for an answer. God bless you, darling."

On August 8th he wrote again: " Always remember health first, without which you can do nothing; and remember you are not strong by any means.—So be careful of yourself, darling, for my sake, for should anything happen you I never would forgive myself for consenting to your going on the stage.". Signing, " Affectionately ever your own husband."

On the 20th of August she wrote:—" John: I arrived here this morning very fatigued. I did not telegraph because I determined before I started not to go either to you or West Chester.

" I am tired of acting in this farce, and deceit is not my role. When I went to Detroit the only thing I prayed for was that I might never see your face again, but your own actions obliged me to be deceitful. I had no alternative but that, or experience trouble in getting off. My being away from you has fully convinced me (although I knew it before) that I could never again endure the thought of living with you—no matter in what relation. I would sooner die than be forced to do so, and I know the law cannot force me to. * * *

" I am able and willing to take care of myself, and ask no bones off of any one.

" I would rather a great deal not see you as I know you would be unpleasant. If you consult my inclinations, or have any regard for my desires, you will not try to. I feel that I never want to see you again and I might as well say so."

He replied:—

" West Chester, August 22d 1866.

" My own darling:

" For as such I now probably address you for the last time—it is with a crushed and broken heart that I now try to pen this my last letter to you. When I look back and review the past five years of our married life, and then think that in one brief day that happiness, those hopes and aspirations, have all vanished away. Is it so, or is it a dream? Would to God it were! As it is I cannot realize it. I am exerting myself now to do what I feel I cannot perform, that of obeying your wishes and bidding you farewell, never to live and love each other as we once did; never to meet or anxiously expect the arrival of each other; never to

[Odiorne's Appeal.]

call each other by those endearing names we loved to. All, all is past, and no comfort comes to heal the broken heart.

\* \* \* \* \* \* \* \* \* \*

To say I loved you would be only partly true—to say I idolized you is true. Darling, is there no hope ? Can you look on and see me wasting away and not stretch forth one hand to save ? Am I to be for ever cast forth from your heart and thoughts ? Oh, no ! it is impossible, it cannot be, that you who have been my wife for years, bone of bone and flesh of my flesh, can so easily renounce one whom she vowed to love and honor."

\* \* \* \* \* \* \* \* \* \*

She replied :— "August 24th 1866.

" John :

" I have just received your mad letter." \* \* " My decision is the result of calm, deliberate and decided reflection. I feel that by doing what you wish, I would be committing a crime against my own nature. I tell you that every feeling in my nature rises in the most terrible revolt and repugnance at the simple idea of ever being anything to you—it is disgusting to me. I swear it by all that is holy, and yet you are so selfish as to seek by your sorrow to influence my inclinations. But I repeat, you can never do it. I shall never under heaven be yours again, and you might as well, first as last, view it in a just and practical light." \* \* " I never want to look upon your face again, so help me God."

He replied, August 26th 1866, in a long affectionate letter, saying he would not again molest her, and referring to her having told him that she was attached to another, he wrote :—

" You say that what you told me was but too true. Annie, as you value your peace hereafter, study him well, try him, above all deceive him not. Confess everything. Marry not till you are entirely free from me. Let him know you are married. Gain your divorce—I shall not stop it, but marry not till then, for he will be sure to find it out, then you would suffer."

On the 27th of August she wrote to him her last letter, in which she says :—

" It was an ill assorted match in the beginning. There was never, even from the first, any congeniality between us. We never understood each other, and I have ceased entirely to love you. But the remembrance of your last letter will always make me think kindly of you, and I give you my solemn promise that should I ever wish assistance from you I will never hesitate to ask it, or advice either.

" But let all this communication cease between us. Should I need you, I can easily make inquiries, and find you ; mind, I never expect to do so : I am merely supposing a case."

4 P. F. Smith—12

[Odiorne's Appeal.]

On the hearing before the Register's Court the appellant claimed the right to administer as widow; that the decedent's residence had.been in Philadelphia, and administration had been granted to her there, and that the grant to David W. Odiorne was in other respects contrary to law.

The Register's Court (Butler, President of the Common Pleas, delivering the opinion) dismissed the appeal: the widow appealed to the Supreme Court and there assigned for error:—

1. The Register's Court below should have annulled the letters of administration granted David W. Odiorne.

2. The widow, Annie I. Odiorne, was entitled to letters of administration.

*J. W. Latta*, for appellant.—As to granting letters to non-residents: Sarkie's Appeal, 2 Barr 159; Schonberger *v.* Lanc. Sav. Inst., 4 Casey 456. As to the widow's right: McClellan's Appeal, 4 Harris 110.

*W. Townsend*, for appellee.—As to widow's right: Fleming *v.* Pelham, 3 Haggard 218, note *a*; Conyers *v.* Kitson, Id. 556; Lamdell *v.* Lamdell, Id. 568; Chappell *v.* Chappell, 3 Curteis 429; Spier's Appeal, 2 Casey 233; Dillinger's Appeal, 11 Id. 357; Tozer *v.* Tozer, 2 A. L. J. 510.

The widow will be a litigant in the distribution: Bieber's Appeal, 1 Jones 157; Ellmaker's Estate, 4 Watts 35. As to nonresidence of administrator: Act of 6th April 1859, § 1, Purd. Dig. 287, pl. 97; Act of March 29th 1832, § 27; Sarkie's Appeal, 2 Barr 159.

The opinion of the court was delivered, February 18th 1867, by

WOODWARD, C. J.—Where a wife leaves her husband and renounces all conjugal intercourse a considerable time before his death, she becomes not such a widow, after his death, as was in the contemplation of the legislature when the Acts of Assembly were passed which entitle her to administer his estate and to appropriate $300 of it to her own use. It has been held that desertion for more than twelve years forfeits her rights under these statutes: 2 Am. Law Reg. 510. Nor is a wife within their meaning who has lived in a foreign country and never formed part of her husband's family here: Spier's Appeal, 2 Casey 233. Nor a wife who, by articles of separation, has relinquished all her rights in her husband's estate: Dillinger's Appeal, 11 Casey 357.

The acts contemplate the case of a wife who lives with her husband till his death and faithfully performs all her duties to his family, not one who voluntarily separates herself from him and performs none of the duties imposed by the relation.

On this ground we think the court judged soundly in denying

administration to the appellant. It is denied that she deserted her husband, but it is impossible to read the letters upon our paper-books without seeing that whilst Odiorne regarded his wife with the tenderest affection and desired her society, she, on the other hand, had conceived an unconquerable disgust for him and was determined never again to live with him. Under date of August 20th 1866, after she had gone to Detroit as an actress, she employed the following language:—

"My being away from you has fully convinced me (although I knew it before), that I could never again endure the thought of living with you—no matter in what relation. I would sooner die than be forced to do so, and I know the law cannot force me to." * * * "I do not suppose that you will view this in any kind of a reasonable light, as reason does not seem to be one of your qualities, but, John, you must listen to facts, and the thing has been reduced to this point: that man nor the devil shall force me to do against my will, let the consequences be what they may; I cannot do otherwise. I am able and willing to take care of myself, and ask no bones off of any of you. I feel that I never want to see you again and I might as well say so."

To this letter he returned a most affectionate expostulation, and she replied, under date of August 24th, repeating with equal emphasis her fixed resolution to live with him no more. "My decision," she says, "is the result of calm, deliberate and decided reflection. I feel that by doing what you wish I would be committing a crime against my own nature. I will tell you that every feeling in my nature rises in most terrible revolt and repugnance at the simple idea of ever being anything to you—it is disgusting to me—I swear it by all that is holy, and yet you are so selfish as to seek by your sorrow to influence my inclinations. But I repeat you never can do it. I shall never under heaven be yours again, and you might as well, first as last, view it in a just and practical light."

There is much more to the same effect in her letters. Now this lady, who could defy her husband's sorrowful entreaties to return to the duties of a wife, ought not to be so prompt to seek the *rights* of a wife, after driving him into a premature grave. It is to the faithful wife, who lives with her husband, and sustains and comforts him as he descends into the dark valley, that the law gives rights which it withholds from her who forgets and repudiates both vows and duties.

Nor do we conceive that this woman is in a position to object that administration was granted to one out of the state. No doubt the register required satisfactory security within the state to be given, and seeing that the appellant has no right to be preferred in the administration, we see no ground for vacating the letters that have been issued.

The decree is affirmed,