## Myers's Estate.

*Decedent's estates—Widow's exemption—Desertion by wife.*

Where a wife without reasonable cause leaves her husband and renounces all conjugal intercourse a considerable time before his death, she becomes not such a widow after his death as was in contemplation of the legislature when the acts of assembly were passed which entitled her to appropriate $300 of his estate to her own use.

The reasonable cause which justifies a wife in abandoning her husband and prevents the application of the foregoing principle is such as would entitle her to a divorce.

A single act of indignity which comes short of endangering life is not sufficient cause, and especially is this true if it occurred a long time before the separation and has been condoned.

On an application for a widow's exemption, it appeared that the widow had left her husband more than a year prior to his death, and did not return, or offer to do so. The husband made bona fide and repeated requests that she should return.. She testified as grounds for leaving him that her

husband had once struck her, and that he had used abusive and opprobrious terms, but it did not appear that he was persistent in this. Other testimony tended to show that she had quarreled with him, that she had conceived a dislike for him, and that she had said that she had loved one man's "little finger" better than her husband's whole body. There was also evidence that her husband's abusive language was caused by his jealousy of her former lover by whom she had had an illegitimate child. *Held* that the exemption was properly disallowed.

Argued Oct. 27, 1903. Appeal, No. 254, Oct. T., 1902, by Clara Myers, widow of John E. Myers, deceased, from decree O. C. Blair Co., No. 174, 1902, disallowing widow's exemption in estate of John E. Myers, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, MORRISON and HENDERSON, JJ. Affirmed.

Petition for widow's exemption.

The facts are stated in the opinion of the Superior Court.

The portion of the opinion of Judge BELL referred to in the opinion of the Superior Court is as follows:

Viewing the evidence in the present case in the light of the law just quoted, the application of Mrs. Clara Myers for the benefit of $300 exemption acts must be refused. On her own testimony alone she was not justified in living separate and apart from him. If her husband on one occasion had struck her, such blow had been condoned. Her main complaint is of abusive language uttered in fits of jealousy. But she should have been more scrupulous to avoid the least action which would render her husband jealous of her former lover, the father of her illegitimate child.

But the letter dated Ridgway, December 2, 1900, is conclusive against her claim. She commences said letter: "Mr. John Myers," no other introductory words, and signs it by her maiden name, "Clara M. Lightner." Among other things she writes: "And I have left you forever and I dont want ever to see your uggly face enny more you dont nead to blame enney-one for leaving you but myself you dont need to come out here for I never want to see you enny more," etc.

Moreover, the testimony on behalf of respondent tended to show a sincere desire for reconciliation on the part of the husband, and a refusal by the wife to return and live with him.

As we have before stated, we think that the wife failed to show any just and valid reasons for her separation from her husband. The rule is discharged.

*Error assigned* was decree disallowing the exemption.

*H. A. McFadden*, with him *H. H. Waite*, for appellants.— The claimant was justified in leaving her husband : Cattison v. Cattison, 22 Pa. 275 ; Odiorne's App., 54 Pa. 175 ; Dewalt's Est., 38 P. L. J. 275 ; Simpson's Est., 22 W. N. C. 172 ; Terry's App., 55 Pa. 344 ; Compher v. Compher, 25 Pa. 31 ; Sellers's Est., 82 Pa. 153 ; McCann's Est., 27 W. N. C. 439 ; Hill v. Walton, 3 W. N. C. 545.

*J. Lee Plummer*, for appellee.—The wife failed to show any just and valid reason for her separation from her husband : Odiorne's App., 54 Pa. 175 ; Nye's App., 126 Pa. 341 ; Kahn's Est., 3 Pa. Dist. Rep. 806.

OPINION BY RICE, P. J., January 21, 1904 :

These propositions which apply to and control this case are established by the decisions : first, where a wife without reasonable cause leaves her husband and renounces all conjugal intercourse a considerable time before his death, she becomes not such a widow after his death as was in contemplation. of the legislature when the acts of assembly were passed which entitle her to appropriate $300 of his estate to her own use ; second, the reasonable cause which justifies a wife in abandoning her husband and prevents the application of the foregoing principle is such as would entitle her to a divorce ; third, a single act of indignity which comes short of endangering life is not sufficient cause, and especially is this true if it occurred a long time before the separation and has been condoned : Odiorne's Appeal, 54 Pa. 175 ; Nye's Appeal, 126 Pa. 341 ; Henkel's Estate, 13 Pa. Superior Ct. 337, at page 340 ; Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290, and cases cited on page 296 ; Roth v. Roth, 15 Pa. Superior Ct. 192. The last two cases and the cases therein cited bear more particularly upon the third proposition. The fact that the appellant left her husband more than a year prior to his death and did not return

or offer to do so is undisputed, and the fact that she persisted in her separation notwithstanding his bona fide and repeated requests that she should return, is clearly established by the testimony. In December, 1902, she wrote him the following letter: " Mr. John Myer. I had a letter from home and they said you would not give my close to them I will never go after them you now that we can't live to gather and I have left you for ever and I don't want ever to see you ouggle fase enny more you don't need to blame enny one for leaving you but my self you dont nead to come out here for I never want to see you enny more you have talk nise a bout me and if it aint stop I will make you prove it and I em going to get red of you as soon as I can John you dont nead to ans this for I will not be here to receive it I em going out to aunt mandes." (Signed) " Clara m Lightner." This letter taken in connection with the other testimony leaves no room for doubt that her severance of the conjugal relation so far as she was able to accomplish it without legal proceedings was deliberate, irrevocable and complete. The only question involved in the case which fairly can be said to be in dispute is whether she voluntarily deserted her husband or was compelled thereto by such conduct on his part as would entitle her to a divorce. Her allegations were first, that he did not furnish her sufficient clothes ; second, that on one occasion he struck her; and third, that he addressed her in abusive language and applied to her an opprobrious name. Her testimony as to the first allegation was so weak and was so far refuted by the testimony adduced on the other side as to warrant its dismissal without further discussion. As to the second allegation she testified as follows : " Did he ever abuse you in any way ? He hit me once ; that is all. Where ? In the face. When was that ; how long before you left? It was a good while before I left him." It is apparent from this and other testimony given by her that this was not the cause for which she left him, and it is equally clear that under the construction given to the statute in the decisions heretofore referred to this single indignity was not sufficient to entitle her to a divorce. As to the third allegation her testimony, to some extent corroborated by other witnesses, shows that at times her husband addressed her in angry, abusive and opprobrious terms ; but even her testimony fails to show convincingly that this was his persistent

course of conduct. But the case is not to be disposed of upon her testimony alone. Her father testified that on one occasion they had a "jawing match." Another witness testified that the reason she gave for refusing to go back to her husband was that he would "fly up" and then she would "fly up." Another witness testified that on one occasion when he came home he said, "'Hello, Sis,' and she called him a name and then she would not talk to him." Another witness testified that on one occasion she said that she loved one man's "little finger better than John's whole body." Her letter also contains expressions tending to show that she had conceived a strong dislike for her husband, and it is significant that she did not allude to his conduct as the cause of it or as her reason for leaving him. We need not elaborate farther upon the testimony. These citations from it are sufficient to show that it is not one-sided. Taken as a whole it fairly warrants the conclusion that whilst they had occasional quarrels growing out of his jealousy (more easily provoked perhaps by the fact alluded to in Judge Bell's opinion) in which he used the abusive language above described, yet he regarded her with affection, was sincerely desirous of her companionship and aside from those exceptional occasions was dutiful, and that the quarreling was not all on his side. To say the least, it failed to show, with that degree of certainty that is required in such an issue, that her deliberate abandonment of and persistent separation from her husband were justified by such a course of conduct and continued treatment as to render her condition intolerable and life burdensome and thereby compel her to withdraw from his habitation. This was the conclusion reached by the learned judge below and upon a careful consideration of all the testimony we cannot see that he ought to have concluded differently.

Decree affirmed and appeal dismissed at appellant's cost.