## Lyman's Administrator *versus* Byam and Wife.

*Reciprocal Rights and Duties of Administrators and Widow, under the Acts of April 14th 1851 and April 13th 1859, relative to claim for $300 worth of Real or Personal Property.*

1. If a widow appropriate to her own use three hundred dollars' worth of her deceased husband's personal property, she cannot recover damages against his administrator for not setting apart for her property to that amount.

2. The Acts of April 14th 1851, and of April 13th 1859, contemplate administration, an election of realty or personalty, and an appraisement for the widow; and therefore, where a widow disregarded the legal mode of procedure, neither administering on her husband's estate herself, nor causing any one else to do so, making no election under the statute, but appropriating the whole personalty to her own use without an appraisement, it was held error in the court below, in an action brought by her against the administrator, to recover damages for not setting out the three hundred dollars to which widows are entitled, to reject evidence of the value of the goods taken by her. Before recovering damages, she was bound to account for what she had previously taken.

3. The Orphans' Court may order the sale of the real estate of a decedent, to pay debts, maintain and educate children, &c., but not for the purpose of giving a widow her statutory allowance.

4. A demand by a widow upon an administrator to set apart out of her deceased husband's real estate, enough to satisfy her claim of three hundred dollars, is in time if made before a sale of the property for the payment of debts; but a demand to sell real estate for this purpose is unauthorized by law.

ERROR to the Common Pleas of *Potter county*.

This was an action on the case brought April 20th 1858, by Isaac Byam and Fanny his wife, against Charles S. Jones, administrator of Harry Lyman, deceased.

The case was this: Harry Lyman, the former husband of Mrs. Fanny Byam, died in September 1854, leaving a widow and nine children, six of whom were minors. At the time of his death, he was seised of a lot of land, containing about eight acres, on which was erected a small frame house and barn, and was possessed of some personal property valued at from about $200 to $400, but was so much indebted as to be insolvent.

No letters of administration were taken out by the widow, but within a month after his death, she moved to another part of the county with all the personal property, without making any inventory or appraisement of the goods.

On the 23d of November 1855, Charles S. Jones, after citation to the widow, took out letters of administration on the estate of the deceased.

The appraisers found no personal property, nor did the administrator make any effort to recover it, under the belief (as was

[Lyman's Administrator *v.* Byam and Wife.]

said) that the widow intended to retain it in virtue of her right to retain $300 worth of property of her deceased husband.

On the 20th of February 1857, Mrs. Lyman presented her petition to the Orphans' Court of Potter county for a rule on the administrator, requiring him to make application to the court for an order for the sale of the real estate of deceased, in pursuance of which an order of sale was asked for by the administrator and granted, under which the real estate was sold to Mrs. Lyman for $50, which sum was paid by her to the administrator on the 24th of September 1857. On the 7th of April 1857, the widow had made a formal demand in writing for the property to which she was entitled under the Act of Assembly, which was disregarded by the administrator. This action was brought April 20th 1858, to recover the $50 which the administrator had received from her for the land.

On the trial the defendant offered to prove, by Joseph Mann, a judgment-creditor of deceased, that " Mrs. Byam, as widow of Harry Lyman, soon after his death, took the personal property, and agreed with the witness that the value of the real estate should be applied to the payment of creditors."

This was objected to on the ground that Mr. Mann could make no contract which would be binding on the other creditors; that there was no mutuality to such an agreement, and no consideration making it binding on her. The court below sustained the objection, and rejected the evidence, noting an exception for defendant. The defendant's counsel requested the court to charge the jury,

1. That if from the evidence they find that the widow of Harry Lyman, soon after his death and before an administrator was appointed, took the property of the estate to the value of $300, that she is not entitled to recover in this action, which is brought to recover the value of the real estate.

2. That the widow of the deceased having, on the 20th day of February 1857, applied to the Orphans' Court for an order on the administrator to sell the real estate, she has no right to complain that a sale was made; the sale having been made at her request, and the real estate sold to her, she is not entitled to recover in this suit for the proceeds of said sale.

3. That the application for an appraisal of the real estate not being made by the widow until after she had obtained an order on the administrator to sell, was made too late, and therefore the plaintiff cannot recover.

The court refused to charge the jury as requested by the counsel of defendant in the points submitted, but charged substantially as follows :—

" There is no evidence in the cause showing that Mrs. Byam elected to retain the personal property of her deceased husband

[Lyman's Administrator *v.* Byam and Wife.]

under the exemption law, or that it was ever appraised or set out to her. She had no right, therefore, to control or dispose of it, and was bound to deliver it up to the administrator at any time when required by him. It does not appear that she ever demanded it, but her responsibility for its safe custody and delivery to him has not ceased, and she has not forfeited her right to claim $300 out of the real estate because the administrator has not done his duty in securing for the creditors and disposing of the personal property. Mrs. Byam notified the administrator in due form and in due season, of her claim on the real estate, and asked him to have it appraised and set off to her under the law. This she had an undoubted right to do, and the defendant having neglected and refused to do his duty in this respect, is liable in this suit for the damages Mrs. Byam has sustained thereby. The right of Mrs. Byam was not waived by her application to the court for an order compelling the administrator to sell; nor was her demand for the appointment of appraisers made too late."

Upon the whole evidence in the cause, the plaintiffs are entitled to recover.

Defendant's counsel excepted to the charge before verdict.

Under these instructions, there was a verdict and judgment in favour of plaintiffs for $50, whereupon the defendant sued out this writ, and assigned for error the following matters, viz.:—

1. The court erred in rejecting the evidence of Joseph Mann.

2. The court erred in charging the jury that "Mrs. Byam notified the administrator in due form and in due season of her claim on the real estate."

3. The court erred in charging the jury that "the right of Mrs. Byam was not waived by her application to the court for an order compelling the administrator to sell."

4. The court erred in charging the jury that "upon the whole evidence in the cause the plaintiffs are entitled to recover."

5. The court should have submitted the question to the jury in accordance with defendant's first point, to say whether the widow had not taken of personal property all she had a right to claim of the estate.

5. The court erred in not instructing the jury that the widow had no right to complain of the sale of real estate, she having asked the court to compel the sale.

7. The court erred in not charging the jury that the application of the widow for an appraisal being made after her application for an order to sell, was made too late.

*Mann* and *Knox*, for plaintiffs in error, cited and relied on Davis's Appeal, 10 Casey 256; Weaver's Appeal, 6 Harris; Hammer *v.* Freese, 7 Id. 257; Freeman *v.* Smith, 6 Casey 266.

[Lyman's Administrator *v.* Byam and Wife.]

*Curtis* and *Olmsted*, for defendants in error.

The opinion of the court was delivered, March 28th 1861, by
WOODWARD, J.—We think the court erred in not submitting
to the jury, the question suggested by the defendant's first point.
If the widow had really appropriated to her own use $300 worth
of the personal estate of her deceased husband, on what princi-
ple could she be entitled to recover damages in an action on the
case against the administrator for not setting out to her property
to that value? How was she damaged by the administrator's
neglect, if that be true which was alleged? The court suggested
that the administrator might still claim the personalty in her
hands. But he has not yet done, or threatened to do it, and
until he does reclaim the whole, it seems odd that she should
have damages against him for not giving her a part. If the pro-
perty was worth just $300, it is equally clear she is not entitled
to damages whilst she retains it. If it is worth less than $300,
she ought to have allowed the jury to fix its value before they
assessed damages against the administrator.

These observations are limited to the point as presented, but
there are objections of a more general nature to the recovery
had below.

The widow was entitled, in preference to all others, to admin-
ister on her husband's estate. For fourteen months after his
death, she neglected to take letters, or to renounce in favour of
any one else; and meanwhile gathered up all the personal estate
and removed to another part of the county. Now, the statutes
which give her $300 worth of the estate, contemplate a regular
administration. By the Act of 14th of April 1851, she may
retain either "real or personal estate" to that amount, which
implies an election; and by the Act of 13th April 1859, that
which she elects is to be appraised by the appraisers of the per-
sonalty, which implies administration in the usual course. When
a widow disregards the legal course of procedure—takes no
letters, and causes none to be taken—makes no election, and
has no appraisement whatever, but appropriates the whole per-
sonalty to her use, it is a good deal to say that she may have
an action against a creditor who subsequently takes letters of
administration; but it is quite too much to say, that in such
action the administrator may not prove the value of the goods
taken by her. Yet that was the ruling here. Before she re-
covered damages, she surely ought to have accounted for what
she had taken. Such effects as they were, would be greatly
consumed in fourteen months. Their value, when she appro-
priated them, was the point of inquiry. There was evidence on
that point, and it ought to have been submitted.

On the 20th February 1857, two years and a half nearly after

[Lyman's Administrator *v.* Byam and Wife.]

her husband's death, the widow, without offering to account for the personalty, compelled the administrator, by rule of court, to apply to the Orphans' Court for an order to sell the real estate; it was granted, and the real estate was sold to the widow herself, for $50, which she paid to the administrator. Then came this action against the administrator, in which she recovered $50 as her damages for not setting out to her her widow's rights. This most singular procedure had no regard to the statutes. I repeat, that they contemplate an election on her part of realty or personalty, and an appraisement, not an Orphans' Court sale. The Orphans' Court may order a sale of decedent's real estate to pay debts, and to maintain and educate children, but not for the purpose of giving the widow her statutory allowance; and this sale was made, I suppose, for the purpose of paying debts, of which there were plenty; for the intestate died insolvent. Yet the widow recovered all it produced, without at all accounting for the personalty, and thus obtained all the property, both real and personal, and left the administrator with a bill of costs to pay, instead of an estate to administer.

If, on accounting for the personalty, it had appeared that her claim of $300 had not been satisfied, she might have had enough of the real estate set out to her to satisfy it; or if, in process of administration, the realty were converted into money, she might claim her deficiency out of that; but to keep all the personalty without account or appraisement, and recover all the proceeds of the realty without allowing a jury to inquire into the value of what she had appropriated, was carrying measures with too high a hand, even for a widow. The statutes are very favourable to widows, and should be executed with the benignant spirit in which they were conceived; but to sustain the ruling in this action, would subvert the statutes, and confound all orderly administration.

We do not say that the action would not lie. It is founded on the administrator's neglect to look up and appraise the personalty, and though at the late hour at which he took letters, he would not probably have found it all, still it was his duty to appraise what he could find. But was the widow damaged by his neglect? That is the question in this action. And that question cannot be properly decided without inquiring into the matter proposed by the defendant's first point; and therefore the judgment must be reversed.

We see no other error upon the record. The evidence of Mann was properly rejected, for he had no power to enter into a binding arrangement with the widow about the personal estate. And if the demand upon the administrator was that he should set off enough of the real estate to satisfy her claim of $300, we think it was in time. If, however, it was a demand to sell the real

[Lyman's Administrator *v.* Byam and Wife.]

estate, the objection would be, not that it was out of time, but that it was not the demand she was authorized to make. Whichever it was, and whenever made, her claim on the real estate would be limited to the difference between the value of the personalty and her $300.

We are sorry to be obliged to reverse a judgment in an estate so illy conditioned to sustain the costs of litigation, but the error we have pointed out is too flagrant to be overlooked.

> The judgment is reversèd, and a *venire facias de novo* is awarded.