# Terry's Appeal.

1. A married woman is not required at her peril to take notice of the death of her husband who had deserted her and been absent before and at his death.

2. A married woman who was deserted by her husband, continued to support their children, he making no provision for her. In such case the family relation exists, although actual cohabitation be suspended by the illegal act of the husband.

May 18th 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Appeal from the Orphans' Court of *Lancaster county*, distributing the estate of George W. Terry, deceased, in the hands of his executors. The balance for distribution was $2255.32.

[Terry's Appeal.]

By his will, dated March 25th and proved April 6th 1864, the testator gave to his mother the interest of his estate for life, gave two legacies of $150 each, and gave the residue to a brother and his own " two sons he had by Sarah Jackson, of Philadelphia."

After the auditors had held several meetings, Sarah Jackson, named in the will as the mother of his children, employed counsel and appeared before the auditors, at a meeting held October 14th 1865, alleged that she was the wife of the testator, and claimed the $300 allowed by the Act of Assembly to the widow of a decedent.

Much testimony was heard on the question of marriage, Terry's desertion of her and her ignorance of his death. She kept the children after his death.

The auditors reported that they—

" Consider the testimony before them sufficient to establish a marriage between George W. Terry and Sarah Ann Jackson, from the autumn of 1850, by reputation, by cohabitation as man and wife, and by the admissions of the testator; and that these presumptions are not rebutted by any subsequent acts or declarations of Sarah Ann Terry, nor by the testator's absence from her for nearly ten years before his death, nor by his naming her Sarah Jackson, instead of his widow, in his will.

" It is objected to the allowance of $300 under the exemption laws, because the claim was not made in time, not having been made until eighteen months after testator's death, after the real estate had been sold, the account on the estate had been filed, and the auditors to distribute appointed. It is in evidence that the testator absented himself from claimant nearly ten years before his death, and that during that time she never heard from, and but rarely had any tidings of, him; that she did not know of his death until September last, when she immediately employed counsel, and at the first meeting of the audit afterwards made her claim. Laches can only be imputed to one who is either bound to take notice of the happening of an event, or to one having actual notice of it. No actual notice or knowledge existed here, until the time mentioned; and we know of no rule of law which requires a married woman to take notice, at her peril, of the death of her husband who had deserted her, and had been absent for a long period before, and at the time of, his death.

" The auditors think she was in time, and award her $300 in money which she claims, to be paid to her by the executor out of the balance in his hands.

" As the widow claims adversely to the will, which gives her nothing, the auditors do not regard her as having any other rights (other than her $300) upon the fund for distribution, which is wholly the proceeds of real estate sold in pursuance of the directions in the will." * * *

On exceptions, the court (Hays, A. J.) approved the finding of the auditors as to the marriage, but held that the widow had lost her right to the $300 by laches, in not making an earlier demand.

The widow appealed, and assigned the decree of the Orphans' Court for error.

*S. H. Price*, for appellant, cited Acts of April 11th 1848, § 11, Pamph. L. 537, April 14th 1851, § 5, Pamph. L. 613, Purd. 352, pl. 3–5; Compher *v.* Compher, 1 Casey 31; Lyman's Adm'r. *v.* Byam, 2 Wright 479; Burk *v.* Gleason, 10 Id. 297.

*I. E. Hiester*, for appellees, cited Acts 14th April 1851, § 5, Pamph. L. 613, 8th April 1859, § 1, Pamph. L. 425, Purd. 281, pl. 58, 59; Spier's Appeal, 2 Casey 233; Dodson's Appeal, 1 Id. 232; Neely *v.* McCormick, Id. 255; Compher *v.* Compher, 1 Id. 31; Mark's Appeal, 10 Id. 36; Davis's Appeal, Id. 256; Baskin's Appeal, 2 Wright 65; Lyman *v.* Byam, Id. 475; Burk *v.* Gleason, 10 Id. 297.

The opinion of the court was delivered, July 3d 1867, by

AGNEW, J.—The main controversy in the court below was, whether the appellant was the wife of George Terry. Three auditors were appointed to hear the case, who, after taking the testimony of many witnesses, found in favor of the marriage, and the court below approved of their finding. They also found that Terry has deserted his wife, and was absent from her for ten years before his death, he living in Lancaster county, and she in Philadelphia with her mother, and keeping her two children, the issue of their marriage. She seldom heard from him, and he was dead eighteen months before she was apprised of his death. Her first information was by a letter from the executor in September, when she immediately employed counsel, and appeared before the auditors in the following month and claimed the $300 provision under the Act of 1851. The auditors allowed her claim, but the Orphans' Court set it aside on the ground of laches, holding it to have been the duty of Mrs. Terry to inquire and ascertain the death of her husband in due season to make the demand. The auditors having found that no actual notice or knowledge existed until the receipt of the letter from the executor, we agree with them in saying that we know of no rule of law which requires a married woman to take notice, at her peril, of the death of her husband who has deserted her, and had been absent for a long period before and at the time of his death.

The appellee cites the case of Anna F. Spier, 2 Casey 233, and now contends that Mrs. Terry is not entitled to the provision of the Act of 1851, because living separately from her husband in the

city of Philadelphia. In an opinion just read in Hettrick's Ex'r. *v.* Hettrick (*ante* 290), from Cumberland county, we have decided that where the family relation between husband and wife has been voluntarily broken up and she is living apart with a provision for maintenance, though called alimony, and so continues at the husband's death, she is not entitled to $300 under the Act of 1851. But in this case there was no voluntary relinquishment of the relation on part of Mrs. Terry and no provision for her; while after her husband's desertion she kept the children and maintained her family relation along with them so far as it lay in her power. There is no reason why the provision of the law should not apply to her. It is precisely a case which the Act of 1851 intended to meet in omitting the words " who were residing with him at the time of his death," contained in the Act of 1850. In such a case the family relation exists in contemplation of law, although actual cohabitation be suspended by the illegal act of the husband.

The decree of the Orphans' Court is therefore reversed, and the auditors' report, allowing Mrs. Terry $300, is confirmed, and the costs are directed to be paid out of the estate of George W. Terry.