## First National Bank & Trust Company in Waynesboro v. Jackson, Admr.

*Keller & Benedict*, for plaintiff.
*John R. Jackson*, for defendant.

DAVISON, P. J., September 9, 1939.—Albert Hixon died testate August 1, 1938, and letters of administration c. t. a. were issued on his estate to John R. Jackson. On October 1, 1938, Elizabeth Hixon, his widow, presented her petition to the Orphans' Court of Franklin County, asking that there be set aside to her $500 in cash as her widow's exemption, of which sum $450 was set aside to her out of the proceeds to be derived from the sale of real estate owned by decedent in his lifetime, and on November 2, 1938, no exceptions having been filed thereto, said widow's exemption was confirmed absolutely by the court. No question is raised in this proceeding as to the regularity of the setting aside of this money to the widow as part of her exemption, but on the other hand it is assumed that all matters pertaining to the vesting in her of this sum were regular and correct or there would

be no estate of hers which could have been thought to be the subject of attachment.

At the time of his death, the First National Bank and Trust Company in Waynesboro, Pa., held a judgment against said Albert Hixon and said Elizabeth Hixon, as to no. 222, October term, 1936, for $650 and some interest. The real estate of said Albert Hixon was sold by said administrator c. t. a. under order of the orphans' court of this county, for the payment of his debts, which sale was confirmed on December 3, 1938, and on March 29, 1939, the administrator filed his first and final account, to which account exceptions were filed by the First National Bank and Trust Company on April 27, 1939.

On April 21, 1939, the First National Bank and Trust Company had issued out of the Court of Common Pleas of Franklin County an attachment execution, sur judgment no. 222, October term, 1936, directing the sheriff to attach the moneys in the hands of said administrator due said Elizabeth Hixon as said widow's exemption, which writ was duly served by said sheriff.

On July 7, 1939, the administrator filed his petition for a rule on the First National Bank and Trust Company to show cause why said attachment execution should not be dissolved, it being averred in the petition that the widow's exemption was not subject to attachment execution, and that the court of common pleas had no jurisdiction, but that the orphans' court had exclusive jurisdiction. An answer was filed to this rule and the matter is now before us for determination after argument by counsel for both parties.

We see no merit in the contention that this court has no jurisdiction in this matter. The fund in question is not now part of the estate of Albert Hixon, but the appraisement having been confirmed by the court the fund passed to the widow, Elizabeth Hixon, as her exemption. As was said in Hildebrand's Estate, 262 Pa. 112, in reference to a widow's exemption, "By asserting it the amount of it ceases to be regarded as part of a decedent's estate." In

addition, this is not an attempt on the part of the creditor to collect its claim from a decedent's estate, but a proceeding of a creditor to collect his claim from another person whose fund had been awarded to her but had not yet been paid to her by the administrator. It was clearly not a matter for the orphans' court but within the jurisdiction of the court of common pleas.

The sole question, then, for our decision is whether a fund comprising a widow's exemption from her husband's estate, duly appraised to her and that appraisement finally confirmed by the court, the same being cash derived from the sale of decedent's real estate and yet remaining in the hands of the administrator c. t. a., is subject to attachment execution by a creditor of said widow.

In his argument counsel for the attaching creditor cites section 10 of the Act of April 13, 1843, P. L. 233, as follows:

"That all legacies given and lands devised to any person or persons, and any interest which any person or persons may have in real or personal estate of any decedent, by will or otherwise, which are subject to foreign attachment by the act of the twenty-seventh of July, eighteen hundred and forty-two . . . shall be subject to be attached and levied upon in satisfaction of any judgment in the same manner as debts due are made subject to execution by the twenty-second section of the act of sixteenth June, eighteen hundred and thirty-six".

He also cites the Act of July 27, 1842, P. L. 436, as providing for the attachment by foreign attachment of legacies, devises, or any interest which any debtor may have in the estate of any decedent, whether by will or otherwise.

It seems to us that that is where these acts are not applicable to the instant case. The exemption allowed to a decedent's widow is not an interest in his estate, and in our opinion is not subject to attachment under these acts.

In Hildebrand's Estate, supra, where the question was whether the widow's $500 exemption was subject to the direct inheritance tax, the court said:

"Exemption acts have been conceived in a spirit favorable to widows and have received an interpretation consistent with their conception: Lyman v. Byam, 38 Pa. 475; Peeble's Est., 157 Pa. 605. Such an act creates an independent bounty, and is of no kin to one of distribution: Compher v. Compher, 25 Pa. 31; Nevin's App., 47 Pa. 230; King's App., 84 Pa. 345; Gilbert's Est., 227 Pa. 648; Buckland's Est., 239 Pa. 608. . . . A widow's exemption is a 'preferred claim,' and, therefore, must first be met. It is a 'gift of the law prompted by considerations of public policy': Beetem & Co. v. Getz, 5 Sup. Ct. 71, Peeble's Est., supra.

"An estate that passes 'either by will or under the intestate laws' is subject to the tax, but a widow's exemption is not such an estate. It does not come by either of these ways. It is neither a legacy or devise, nor an inheritance. Subject to a purchase-money lien it is preferred to all claims against an estate. By asserting it the amount of it ceases to be regarded as part of a decedent's estate. Against it a decedent's creditors, legatees, devisees or distributees cannot prevail: Peeble's Est., supra. The action of a widow properly claiming it distinguishes it as her estate; which had been held in abeyance by her husband during his life. The act says it is something which she may 'retain,' thus pointedly implying ownership.

"Such exemption is a wife's inchoate property right in a husband's estate, which becomes complete when as his widow she sustains her claim for it."

In Stauffer's Estate, 89 Pa. Superior Ct. 531, 535, it is stated: "The widow's exemption is not an estate by inheritance, but an independent bounty".

In Sweeny v. Hunter, 145 Pa. 363, where the question was in reference to laborers' exemption laws, the court held it to be grounded on public policy.

In addition to this we are firmly convinced that the law does not permit the property passing to a widow as her exemption to be attached by her creditors. In Peebles' Estate, 157 Pa. 605, 609, it is said: "The statutory exemption in her favor may, therefore, be regarded as a preferred claim or gift of the law, prompted by considerations of public policy"; and in Compher v. Compher et al., 25 Pa. 31, 34, the court says: " 'So much of the estate is withdrawn from the general course of administration, and specifically appropriated by law to the use of the 'widow and family' ".

The wording of the act creating such exemption, section 12(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, shows the purpose of the exemption, and that purpose is sufficient to save it from the creditors of the widow. Said section, in part, reads as follows:

"The widow, if any, or if there be no widow, or if she has forfeited her rights, then the children forming part of the family of any decedent dying, testate or intestate, within this Commonwealth, or dying outside of this Commonwealth, but whose estate is settled in this Commonwealth, may retain or claim either real or personal property, or the proceeds of either real or personal property, belonging to said estate, to the value of five hundred dollars; and the property so retained or claimed shall not be sold, but suffered to remain for the use of the widow or children."

If for reason of public policy and having regard for the immediate needs of the widow and children of a decedent, the law sets aside a certain sum from his estate and directs that it "be suffered to remain for the use of the widow or children", it certainly did not intend that that purpose could be defeated by a creditor of the widow seizing it for her debt, and thus depriving her and the children of the very benefit the law created. It did not intend to set up a fund for a creditor, whereby he could secure his debt, but leave the widow perhaps penniless. We will not so hold, but, on the other hand, will carry out what we

feel was the beneficent purpose of the law, giving to a widow or children of a decedent something to live on during the trying days following the death of the natural provider for the family and the time required to put his estate in order. The same thought is expressed in Boockfor's Estate, 26 Dist. R. 753, where Judge Lamorelle says: "Moreover, a widow's exemption is primarily intended for her support and maintenance and for that of her children, and, as its name implies, it is not liable for debts." See also Dent's Estate, 21 D. & C. 535.

Potter's Estate, 6 Pa. Superior Ct. 633, is cited by the administrator c. t. a. in support of his position that the exemption is not attachable for the debt of the widow. In that case, however, no attachment or other execution had been issued, and the decision that the exemption could not be held responsible for the widow's debt rested on the fact that the judgment on which the claim was based was not in any way a lien on it. The fund had been created after the death of the husband and the lien existing against him and his wife at the time of his death never bound it, no attachment or other writ having been issued.

Being satisfied that the purpose of the widow's exemption would be defeated if it were made liable for her debts created during the lifetime of her husband, we will dissolve the attachment execution. Of course, for debts a widow might create after the fund was awarded to her, it would be liable like any other property she owned. We are not in doubt as to our ruling in this matter, but if we were we would follow the ruling in Wade's Estate, 43 Lanc. 511, where it is said: "In matters of doubt the Court will always lean to the protection of the widow"; and as was said in Hildebrand's Estate, supra: "Exemption acts have been conceived in a spirit favorable to widows and have received an interpretation consistent with their conception."

It was also argued to us that the widow in this case has waived her right to this exemption from her husband's estate. With this we cannot agree. That a widow

may waive her right to her exemption is true, but it must be by some act of omission or commission that permits of no other construction. There is nothing of that kind here. True, both she and her husband waived their right to exemption in the judgment note signed, but this referred to the debt then being created and the debtor's exemption allowed by law, and not to her then inchoate right to a widow's exemption in the estate of her husband.

Now, therefore, September 9, 1939, the rule granted July 7, 1939, is made absolute and the attachment execution, no. 199, April term, 1939, is dissolved, at the costs of plaintiff.