## DeSimone Estate

*Vito F. Canuso,* p. p.
*Louis Marion,* for Commonwealth.

KLEIN, P. J., November 10, 1955.—Joseph DeSimone, also known as Joseph DeSimone, Jr., Joseph Francis DeSimone and Francis DeSimone, died on June 14, 1954, intestate, unmarried, having been divorced from his wife, leaving to survive him as his sole heir and next of kin, his daughter, Rose Marie DeSimone, who is a minor for whom Edward Confalone is stated to have been appointed guardian by decree of this court, dated June 29, 1954. Letters of administration on the estate of decedent were granted to the present accountant on July 7, 1954, and proof of advertisement of notice thereof was produced to the auditing judge.

The statement of proposed distribution requests the auditing judge to determine whether or not the accountant has the right to pay the $750 family exemption to Betty DeSimone, divorced wife of decedent and mother of his surviving minor child, Rose Marie DeSimone, for the support and maintenance of the said child during the settlement of the estate. Notice

of this question is stated to have been sent to Edward Confalone, guardian of Rose Marie DeSimone, decedent's minor child. Mr. Marion, on behalf of the Commonwealth, objected to the allowance of the claim.

It appears from the statement of proposed distribution, from testimony submitted at the audit, and from statements of counsel that Elizabeth DeSimone, decedent's former wife, withdrew from his home, taking their 12-year-old daughter, Rose Marie, with her. On November 18, 1953, she instituted divorce proceedings, charging decedent with indignities to the person. A final decree was entered dissolving the marriage on March 22, 1954, three months prior to decedent's death. The child was living with the mother separate and apart from decedent at the time of his death.

The facts are uncontradicted and not in dispute. The only witness heard was Elizabeth DeSimone, decedent's former wife. She testified (page 5):

"Q. Did he leave the house or did you leave the common household?

"A. I left the house because I was thrown out several times. I was just told to get out.

"Q. With your child?

"A. Yes."

An examination of the record in the divorce case indicates that decedent was a violent, brutal man and that he made it impossible and unsafe for his wife and child to continue to reside in his household.

It appears further from the wife's testimony that no court order was sought against decedent for the child's support. His contributions for the child's support were irregular and the husband had to be dunned for the payments. Nevertheless, he actually did support the child. The wife stated (page 4):

"Q. Your husband did not make regular payments? You had to go after him?

"A. That's right.

"Q. Then he would give you irregular amounts?

"A. That's right.

"Q. He would not give you the same thing each time?

"A. The only reason I had no support order against him, he said he would give me something for her every week.

"Q. But he did not?

"A. He did."

Counsel for the Commonwealth contends that the fact that the minor daughter was not living in the same household as decedent and the absence of "definite arrangements as to visitation or support" bars the child's right to the family exemption. With this we do not agree.

It seems clear, and the auditing judge finds as a fact, that decedent did have an agreement with his wife with respect to the child's support and did actually make contributions for her maintenance.

In our opinion, however, whether decedent did or did not contribute to his daughter's support is immaterial to the issue. A father cannot deprive a dependent minor child of the right to the family exemption by his own misconduct.

Section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, provides:

"The spouse of any decedent dying domiciled in the Commonwealth, and if there be no spouse, or if he has forfeited his rights, then such children as form a part of the decedent's household, may retain or claim as an exemption and as a reasonable requirement for support during the settlement of the estate, either real or personal property, or both, not theretofore sold by the personal representative, to the value of seven hundred and fifty dollars . . ."

The statutory exemption is a preferred claim or gift of the law prompted by a consideration of public policy: Peebles' Estate, 157 Pa. 605 (1893). Exemption statutes should be interpreted in the benignant spirit in which they were conceived. See Hildebrand's Estate, 262 Pa. 112 (1918); Lyman's Adm'r. v. Byam et ux., 38 Pa. 475 (1861); Bell's Estate, 139 Pa. Superior Ct. 11 (1939); Gravatt's Estate, 50 D. & C. 679 (1944). Such statutes should always be construed according to the spirit rather than the letter: Nevins' Appeal, 47 Pa. 230 (1864).

Section 211 of the Fiduciaries Act of 1949 was not intended to make any basic change in the law as it existed under the Fiduciaries Act of June 7, 1917, P. L. 447, except to give the right of exemption to a surviving husband: Cullison Estate, 87 D. & C. 516 (1953).

The courts in this state have consistently held that where a wife withdraws from her husband's residence for cause which would entitle her to a divorce, she has not forfeited her right to the family exemption: Celenza's Estate, 308 Pa. 186 (1932); Noblit Estate, 1 Fiduc. Rep. 252 (1951). See also cases cited in Hunter's Pa. O. C. Commonplace Book, vol. 2, p. 1388.

In Henkel's Estate, 13 Pa. Superior Ct. 337 (1900) a husband and wife entered into an agreement to live separate and apart. The wife for a consideration agreed to support herself and her minor children. The court held that the fact that the wife had forfeited her right to the exemption did not relieve the father from his liability to provide for his children and hence did not defeat their right to claim the exemption. Judge Porter, speaking for a unanimous court, said at page 343:

". . . This agreement did not relieve the father from his moral or legal liability to provide for those children. If their mother had died or had failed or

refused to support and maintain the children, the liability of the father for their support and maintenance still remained. Had the mother turned the children out of doors, they were dependent upon their father for some other asylum. The question is not whether the parties live in the same house, but whether, in contemplation of law, they remain members of the family. Where the separation has been through no fault or voluntary act of the dependent person, but has resulted solely from the fault or for the convenience of the father or husband, the family relation, in contemplation of law, continues to exist: Terry's Appeal, 55 Pa. 344."

If a wife who has withdrawn from her husband's household for cause, and if children who live with their mother separate and apart from the father by reason of an agreement of the parents, are held to be entitled to the exemption, how much stronger is the claim of an innocent child of tender years who is driven from her father's home by his brutality and misconduct?

Ordinarily, a child who is sui juris would have the right to freely determine whether he wishes to reside in his parent's household or not. The claim of such a child for the family exemption usually depends on whether he actually resides in the same household as the parent. This is, however, not true in the case of a minor dependent child. Such a child has no choice in the determination of where she will reside and the duty of the parent to support her is a continuous one.

It would be grossly inequitable and contrary to public policy to permit a father, by his own misconduct, to deprive a dependent child of tender age of her right to the family exemption upon his death.

The exemption of $750 will therefore be awarded, payable to Edward Confalone, guardian of the estate of Rose Marie DeSimone, minor.

And now, November 10, 1955, the account is confirmed nisi.