# Balmforth's Estate.

*Decedent's estate — Widow's exemption — Desertion by husband — Act of April 14, 1851, P. L. 612.*

Where a husband has deserted his wife and children in England, and after having become domiciled in Pennsylvania, dies leaving an estate, his wife and children are entitled to the widow's exemption allowed by the Act of April 14, 1851, P. L. 612, although they may have known during his lifetime of his residence in Pennsylvania.

Argued Oct. 11, 1904. Appeal, No. 64, Oct. T., 1904, by Harriet L. Balmforth, from decree of O. C. Phila. Co., Oct. T., 1903, No. 57, granting petition for widow's exemption in Estate of George Balmforth. Before RICE, P. J., BEAVER, OR-

LADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Petition for widow's exemption.
The facts appear by the opinion of the Superior Court.

*Error assigned* was in granting the petition.

*Charles J. Sharkey*, with him *F. Pierce Buckley*, for appellant.—The purpose of the act was to make an immediate provision for the wants of the family, and it has never been extended, actually or constructively, to widows beyond the seas. We legislate for citizens of this country and not for subjects of a foreign country : Spier's App., 26 Pa. 233 ; Platt's App., 80 Pa. 501 ; King's App., 84 Pa. 345 ; Coates's Estate, 6 W. N. C. 367 ; Walter's Estate, 12 Pa. Dist. Rep. 767 ; Groves's Estate, 5 Pa. C. C. Rep. 498 ; Monk's Estate, 9 Montg. 113 ; Larocco's Est., 10 Pa. Dist. Rep. 568.

*Edward Brooks, Jr.*, with him *Frederick J. Geiger* and *Edgar Dudley Faires*, for appellee.

OPINION BY BEAVER, J., November 21, 1904 :
The family is the basis as well as the unit of organization in every civilized community. The maintenance of the family relation is essential to the highest welfare of society. Legislation, therefore, which tends to promote and protect the integrity and well-being of the family is to be liberally construed and faithfully enforced.

The fifth section of the Act of April 14, 1851, P. L. 612, provides : " That hereafter the widow or the children of any decedent, dying within this commonwealth, testate or intestate, may retain either real or personal property belonging to said estate to the value of three hundred dollars, and the same shall not be sold but suffered to remain for the use of the widow and family," etc.

The appellant here lays particular stress upon the words in the act—" retain either real or personal property belonging to said estate " which " shall not be sold but suffered to remain for the use of the widow and family." The literal construction

of this language was probably in the mind of the Supreme Court in the earlier cases relating to this subject, particularly in Spier's Appeal, 26 Pa. 233, in which Mr. Justice KNOX, in delivering the opinion of the court, says: " The language of the act of 1851 is inconsistent with the claim of the widow." This case, however, has been distinguished in the later case to which we shall later refer, upon grounds of morality and considerations of the highest public policy.

The act relates to the estate of a decedent dying within this commonwealth but is silent as to the place of abode of the widow and children.

Platt's Appeal, 80 Pa. 501, which is used as authority for the proposition that a widow who lives without the jurisdiction is not entitled to the benefit of the provisions of the act of 1851 does not, when it is carefully examined, sustain the proposition. Mr. Justice GORDON says at the end of his opinion: " At the time of Platt's death, she (the widow) was a resident of Michigan. So far as anything appears to the contrary, her separation from her husband was voluntary, nor does it appear, as in Terry's Appeal, 55 Pa. 344, that by any method she maintained the family relation as far as was in her power." The ground upon which the widow was in that case denied the benefit of the act was, therefore, not her residence without the jurisdiction but the voluntary separation from her husband and the absence of any evidence that she did anything to maintain the family relation.

Other cases may be cited, particularly Nye's Appeal, 126 Pa. 341, in which it is held, as was done in Odiorne's Appeal, 54 Pa. 175, that: " Where a wife leaves her husband and renounces all conjugal intercourse a considerable time before his death, she becomes not such a widow after his death as was in the contemplation of the legislature when the acts of assembly were passed which entitled her to administer his estate and to appropriate three hundred dollars of it to her own use."

But none of these cases reach the question here involved. The decedent, George Balmforth, without any apparent cause, left his wife, in Yorkshire, England, ostensibly upon an ordinary business errand. He bade her good-bye at their home in 1883 and never returned. She was left with three living children and one unborn. The oldest, a girl of thirteen, was

afflicted with St. Vitus's dance. The woman, although ignorant and unable to write, devoted herself heroically to the maintenance of her family. As she expresses it, "I began baking bread and selling a lot of stuff and anything I could—sewing—anything I could to earn my bread and butter." She received some assistance from the parish. She heard incidentally, in various ways, that her husband was living in Philadelphia but never had any communication from him of any kind and, being unable to write, she could not directly communicate with him. She had knowledge of the fact that her daughter wrote to him several times but had no knowledge of the receipt of any reply. She was informed of his death by his brother and appeared here to claim her rights as his widow. The decedent had, in the meantime, contracted a meretricious relation with another woman who claimed the entire estate as a creditor, being also the executrix of the will.

Was the widow, under these circumstances, entitled to the benefit of the provisions of the act of 1851, supra? Grieve's Estate, 165 Pa. 126, clearly settles this question in her favor. The facts of this case are much stronger than in Grieve's Estate. There the parties were married in Canada, where the wife and three children were abandoned by the husband. Subsequently, however, the husband requested the wife to meet him in the province of Ontario, where they met and were reconciled and where he later left, with the understanding that he was to make a home for the family "in the states" and that the wife should remain in Canada until the husband came or sent for her. He continued to write for several years, after which nothing was heard from him. It appears that he settled in Lancaster, Pa., and married another woman who lived with him there until the time of his death. The wife subsequently came to the United States and for a short time was employed in Potter county, Pa. The language of the late chief justice in his opinion in this case is strikingly appropriate here: "There was no time after his departure in 1884 that she would not have gladly welcomed a redemption of his promise and rejoiced in a reunited family. It was no fault of hers that she was not a member of his household at his death. It was his illegal acts and bad faith that excluded her from it. In contemplation of law, the family relation still existed and his

domicile was hers. Why then should she be denied the exemption which the law allows to his widow ? Surely a refusal of her claim for it must have something more to rest upon than his repudiation of his marital vows and duties." We think the case was well decided in the court below and could not have been otherwise decided, in view of the authority of Grieve's Estate, 165 Pa. 126, which bound both it and us.

Decree affirmed and appeal dismissed at the costs of the appellant.