MAGDALENA KRUMENACKER v. ANTON ANDIS, Executor of the Last Will of Decedent; Magdalena Krumenacker; Katie Stecher; her Children, Peter, Ludvig, Katie, and Thomas Krumenacker Stecher.

(165 N. W. 524.)

**Action — commencement of — summons — service of — by publication — affidavit for — sufficiency of — defendant — residence of — "whereabouts" — not synonymous terms — court — jurisdiction — filing of affidavit — precedes first publication.**

1. Under § 7428, Compiled Laws of 1913, relating to the service of the summons by publication, and stating what is required to be done in order to secure service of the summons by publication, requiring among other things that an affidavit stating the place of defendant's *residence*, if known to the affiant, and if not known, stating that fact. *Held*, that an affidavit which states that the "whereabouts" of the defendant are unknown is not a compliance with the requirements of such section in that the word "whereabouts" in its signification as used in such affidavit is not synonymous with the word "residence" in said section, and an affidavit for publication which contains the word "whereabouts," instead of the word "residence," is wholly defective; and the court acquires no jurisdiction by reason of such defective affidavit. Where such affidavit is in proper form, it must also be filed before the first publication of the summons. If otherwise, the court acquires no jurisdiction.

**Exemptions — statutes — construction of — husband or wife — minor children — persons entitled to claim — residence.**

2. Section 8725, Compiled Laws of 1913, which relates to the setting aside for the surviving wife or husband, or minor children, all property of the testator or intestate which would be exempt from execution if he were living, including all property absolutely exempt, and other property selected by the person or persons entitled thereto to the value of $1,500. *Held*, that such statute is one of exemption, and not of inheritance; and that to entitle one to the benefits of such section such person must bring himself within the letter or spirit of the exemption laws of this state as to residence therein, or at least circumstances must show an intent and desire to establish and have such residence within the state.

Opinion filed October 9, 1917.  Rehearing denied December 14, 1917.

Appeal from the District Court of Stark County, Honorable *W. C. Crawford,* Judge.

Reversed.

*W. F. Blume* and *H. C. Berry,* for appellants.

In an affidavit for service of summons by publication, in an action against one whose residence is unknown, the statement that his "whereabouts" are unknown to affiant is equivalent to a statement that his "residence" is unknown, and is a full compliance with the statute. Comp. Laws 1913, § 7428; Jablonski v. Piesik, 30 N. D. 543, 153 N. W. 274; Dallas v. Luster, 27 N. D. 450, 147 N. W. 95; Horton v. Monroe, 98 Mich. 195, 57 N. W. 109; Leigh v. Green, 62 Neb. 344, 89 Am. St. Rep. 751, 86 N. W. 1093.

For the purpose of sustaining an affidavit for attachment, the complaint should be read and construed with the affidavit. Woods v. Pollard, 14 S. D. 44, 84 N. W. 214; Carr v. Carr, 92 Ky. 552, 36 Am. St. Rep. 614, 18 S. W. 453.

When it is stated that defendant resides in another state, it is sufficient to show that service cannot be made within the state, and is sufficient as basis for service by publication. Bank of Colfax v. Richardson, 34 Or. 518, 75 Am. St. Rep. 664, 54 Pac. 359; Anderson v. Goff, 72 Cal. 65, 1 Am. St. Rep. 34, 13 Pac. 73.

When it is stated that defendant resides in another state, it is sufficient to show that service cannot be made within the state, and is sufficient as basis for service by publication. Hilbish v. Hattle, 145 Ind. 59, 33 L.R.A. 783, 44 N. E. 20; Morrow v. Weed, 4 Iowa, 77, 66 Am. Dec. 122; Callen v. Ellison, 13 Ohio St. 446, 82 Am. Dec. 448; Brown v. Globle, 97 Ind. 86; Barnes v. Shoemaker, 112 Ind. 512, 14 N. E. 367.

Where the jurisdiction of the court depends upon the facts which it is required to ascertain and determine by its decision, its findings of facts showing its jurisdiction is conclusive in collateral attack. Dowell v. Lahr, 97 Ind. 146; Otis v. DeBoer, 116 Ind. 531, 19 N. E. 317; People ex rel. Porter v. Rochester, 21 Barb. 656.

Jurisdiction in such cases is presumed. Withers v. Patterson, 27 Tex. 491, 86 Am. Dec. 643; Holmes v. Campbell, 12 Minn. 221, Gil. 141; Butcher v. Bank of Brownsville, 2 Kan. 70, 83 Am. Dec. 446; Reynolds v. Stansbury, 20 Ohio, 344, 55 Am. Dec. 459; Bush v.

Lindsey, 24 Ga. 245, 71 Am. Dec. 117; Ely v. Tallman, 14 Wis. 29; Potter v. Merchants' Bank, 28 N. Y. 641, 86 Am. Dec. 273; Arnold v. Nye, 23 Mich. 286; Foot v. Stevens, 17 Wend. 483.

A nonresident alien cannot successfully claim exemptions unless so authorized by statute. The statutes of North Dakota do not give such right. 12 Am. & Eng. Enc. Law, 67; Johnson v. Olson, 92 Kan. 819, L.R.A.1915E, 327, 142 Pac. 256; Schouler, Exrs. & Admrs. § 448; 2 Am. & Eng. Enc. Law, 156; Tromsdahl v. Beaton, 27 N. D. 441, 52 L.R.A.(N.S.) 746, 146 N. W. 719; Comp. Laws 1913, §§ 5759, 8725 and 8727.

The exemption of personal property to the widow and children of decedent, like the exemption of the homestead, is intended for the benefit of residents, and contemplates the existence of the family relation in the estate. Ex parte Pearson, 76 Ala. 521; Allen v. Manasse, 4 Ala. 554; Coates's Estate, 12 Phila. 171; Spier's Appeal, 26 Pa. 233; Platt's Appeal, 80 Pa. 501; Monk's Estate, 8 Montg. Co. L. Rep. 113; Auerbach v. Pritchett, 58 Ala. 451; Talmadge v. Talmadge, 66 Ala. 199; Shannon v. White, 109 Mass. 146; Barber v. Ellis, 68 Miss. 172, 8 So. 390; Richardson v. Lewis, 21 Mo. App. 531; Re Bose, 158 Cal. 428, 111 Pac. 258; Austin's Estate, 73 Mo. App. 61; Hascall v. Hafford, 107 Tenn. 355, 89 Am. St. Rep. 952, 65 S. W. 423; Daniels v. Taylor, 76 C. C. A. 139, 145 Fed. 169, 7 Ann. Cas. 352; Alston v. Ulman, 39 Tex. 158; Smith v. Howard, 86 Me. 203, 4 Am. St. Rep. 537, 29 Atl. 1008; Medley v. Dunlap, 90 N. C. 527; Graham v. Stull, 92 Tenn. 673, 22 S. W. 738, and note in 21 L.R.A. 241.

The homestead right is denied to a nonresident. Tromsdahl v. Beaton, 27 N. D. 441, 52 L.R.A.(N.S.) 746, 146 N. W. 719; Blatchley v. Dakota Land & Cattle Co. 26 N. D. 539, 145 N. W. 95.

Property left by will is not subject to the claim to exemptions by a nonresident alien. Comp. Laws 1913, §§ 7730, 8725; Fore v. Fore, 2 N. D. 261, 50 N. W. 712; Kapp v. Public Administrator, 2 Bradf. 258.

The right to exemptions is not personal to anyone; it is a family right. There is no family relationship shown in this case. First International Bank v. Lee, 25 N. D. 197, 141 N. W. 716; Revalk v. Kraemer, 8 Cal. 66, 68 Am. Dec. 304; Farlin v. Sook, 26 Kan. 397; Stanton v. Hitchcock, 64 Mich. 316, 8 Am. St. Rep. 821, 31 N. W.

395; Black v. Singley, 91 Mich. 50, 51 N. W. 704; Emmett v. Emmett, 14 Lea, 369; Prater v. Prater, 87 Tenn. 78, 10 Am. St. Rep. 623, 9 S. W. 361; many citations in note to Sheehy v. Scott, 4 L.R.A.(N.S.) 365; Spier's Appeal, 26 Pa. 233; Ex parte Pearson, 76 Ala. 521.

*Murtha & Sturgeon,* and *C. B. Schmidt,* for respondent.

This is not an equity case, and therefore a trial *de novo* in this court cannot be had. The mere fact that a case is tried to the court without a jury does not make it strictly a court case. Novak v. Lovin, 33 N. D. 424, 157 N. W. 297; More v. Burger, 15 N. D. 345, 107 N. W. 200; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; Gagnier v. Fargo, 12 N. D. 219, 96 N. W. 841; Flora v. Mathwig, 19 N. D. 4, 121 N. W. 63; Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366.

If the findings, in such a case, have substantial support in the evidence, they are not disturbed. State v. Banks, 24 N. D. 21, 138 N. W. 973; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952; State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; Taute v. J. I. Case Threshing Mach. Co. 25 N. D. 102, 141 N. W. 134, 4 N. C. C. A. 365.

Where the affidavit for publication of the summons makes use of the word "whereabouts" in their attempt to show that defendant's "residence" is not known, it is fatally defective. Atwood v. Tucker (Atwood v. Roan) 26 N. D. 622, 51 L.R.A.(N.S.) 597, 145 N. W. 587; Jablonski v. Piesik, 30 N. D. 543, 153 N. W. 274.

Such expressions or terms are not synonymous, and the use of the word "whereabouts" is not a compliance with the statute. Further than this, no affidavit was on file before the first publication of the summons. Jurisdiction in such cases can only be acquired by a strict compliance with the statute. Jablonski v. Piesik, supra; Roberts v. Enderlin Invest. Co. 21 N. D. 594, 132 N. W. 145; Black, Judg. 2d ed. § 232, p. 348; Boswell v. Otis, 9 How. 336, 350, 13 L. ed. 164, 170; Braly v. Seaman, 30 Cal. 611; Comp. Laws 1913, § 7428.

In this state the affidavit for publication and the proof of such service are a part of the judgment roll. It is the established rule that, where the judgment roll discloses the fact that no service was had, then the judgment is absolutely void and may be impeached collaterally. Black, Judgm. 2d ed. §§ 246, 263, pp. 366, 396; O'Malley v. Fricke, 104 Wis. 280, 80 N. W. 436; Carter v. Frahm, 31 S. D. 379.

141 N. W. 370; Boyle v. Ora Plata Min. & Mill. Co. 14 Ariz. 484, 131 Pac. 155; Empire Ranch & Cattle Co. v. Coleman, 23 Colo. App. 351, 129 Pac. 522; Empire Ranch & Cattle Co. v. Gibson, 23 Colo. App. 344, 129 Pac. 520; Empire Ranch & Cattle Co. v. Coldren, 51 Colo. 115, 117 Pac. 1005; Aldrich v. Steen, 71 Neb. 33, 98 N. W. 445, 100 N. W. 311; Chicago, B. & Q. R. Co. v. Hitchcock County, 60 Neb. 722, 84 N. W. 97; Kahn v. Matthai, 115 Cal. 689, 47 Pac. 698; Parsons v. Weis, 144 Cal. 410, 77 Pac. 1007; Galpin v. Page, 18 Wall. 350, 21 L. ed. 959; Vandervort v. Finnell, 96 Neb. 515, 148 N. W. 332; Oziah v. Howard, 149 Iowa, 199, 128 N. W. 364; Lougee v. Beeney, 22 Colo. App. 603, 126 Pac. 1102; Munson v. Pawnee Cattle Co. 53 Colo. 337, 126 Pac. 275; Empire Ranch & Cattle Co. v. Irwin, 23 Colo. App. 206, 128 Pac. 867; Hembree v. McFarland, 55 Wash. 605, 104 Pac. 837; Fogg v. Ellis, 61 Neb. 829, 86 N. W. 494; Hanover v. Turner, 14 Mass. 227, 7 Am. Dec. 203; Brown v. St. Paul & N. P. R. Co. 38 Minn. 506, 38 N. W. 698; Grover & B. Sewing Mach. Co. v. Radcliffe, 137 U. S. 287, 34 L. ed. 670, 11 Sup. Ct. Rep. 92.

The statute limiting exemptions to $500 does not apply in probate proceedings, and that the surviving husband, wife, or minor child is entitled to $1,500 in exemptions. Woods v. Teeson, 31 N. D. 610, 154 N. W. 797; Comp. Laws 1913, § 8725.

Under such statutes a nonresident widow is entitled to the exemption. Sammons v. Higbie, 103 Minn. 448, 115 N. W. 265; Stromberg v. Stromberg, 119 Minn. 325, 138 N. W. 428; Grieve's Estate, 165 Pa. 126, 30 Atl. 727; Comerford v. Coulter, 82 Mo. App. 362; Re Hager, 150 Ill. App. 347; Re McMillan, 28 Ohio C. C. 645; Farris v. Battle, 80 Ga. 187, 7 S. E. 262; Maddox v. Patterson, 80 Ga. 719, 6 S. E. 581; Campbell v. Whitsett, 66 Mo. App. 444; Kapp v. Public Administrator, 2 Bradf. 258; Duplain's Succession, 113 La. 786, 37 So. 755; Banse v. Muhme, 13 Ohio C. C. 501, 7 Ohio C. D. 224; Balmforth's Estate, 26 Pa. Super. Ct. 491; Griesemer v. Boyer, 13 Wash. 171, 43 Pac. 17; Christie's Succession, 20 La. Ann. 383, 96 Am. Dec. 411; Johnson v. Johnson, 41 Vt. 467; Nye's Appeal, 126 Pa. 341, 12 Am. St. Rep. 873, 17 Atl. 618; Mowser v. Mowser, 87 Mo. 437; Comerford v. Coulter, 82 Mo. App. 362; Hastings v. Myers, 21 Mo. 519; King v. King, 64 Mo. App. 301; Allen v. Allen, 117 Mass. 27; Lisk v. Lisk,

155 Mass. 153, 29 N. E. 375; Welch v. Welch, 181 Mass. 37, 62 N. E. 982.

The clear intent of the law is to vest an absolute property right in the widow, and her abandonment of her husband does not affect such right, and such right is not restricted to resident widows. Kellogg v. Graves, 5 Ind. 509; Singleton v. McQuerry, 8 Ky. L. Rep. 782; Mitcham v. Moore, 73 Ala. 542; Jones v. Layne, 144 N. C. 600, 11 L.R.A.(N.S.) 361, 57 S. E. 372; Meyer v. Meyer, 25 S. D. 596, 127 N. W. 595; Welch v. Welch, 181 Mass. 37, 62 N. E. 982; Re Taylor, 5 Ind. Terr. 219, 82 S. W. 727; Field v. Field, 215 Ill. 496, 74 N. E. 443; Sammons v. Higbie, 103 Minn. 448, 115 N. W. 265; Murphy v. Renner, 99 Minn. 348, 8 L.R.A.(N.S.) 565, 116 Am. St. Rep. 418, 109 N. W. 593; Eversole v. Eversole, 169 Ky. 793, L.R.A.1916E, 593, 185 S. W. 487.

The husband by will cannot cut off the wife's exemptions, nor can he by making a will affect such right in any manner. It stands absolute in the widow. Meyer v. Meyer, 25 S. D. 596, 127 N. W. 595; Re Whitney, 171 Cal. 750, 154 Pac. 855; Rountree v. Montague, 30 Cal. App. 170, 157 Pac. 623.

Appellants motion for a new trial was properly denied by the lower court. There was no showing of diligence in any degree. 29 Cyc. 886 (4) 892, note 10, 894, 898; Goose River Bank v. Gilmore, 3 N. D. 188, 54 N. W. 1032; Sebold v. Rieger, 26 Colo. App. 209, 142 Pac. 201; Gaines v. White, 1 S. D. 434, 47 N. W. 524; Axiom Min. Co. v. White, 10 S. D. 198, 72 N. W. 462; Libby v. Barry, 15 N. D. 286; Smith v. Mutual Cash Guaranty F. Ins. Co. 21 S. D. 433, 113 N. W. 94; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419; Gaines v. White, 2 S. D. 410, 50 N. W. 901; Wagner v. Geiselman, — Tex. Civ. App. —, 156 S. W. 524.

GRACE, J. This appeal involves the interpretation of § 8725 of the Compiled Laws of 1913, and the sufficiency of an affidavit necessary for service by publication in the divorce proceedings referred to in this action. A complete statement of facts is necessary for a full understanding of the issues involved. For the sake of clearness it may be well to note at the inception that there are two Magdalena Krumen-

ackers who are interested in this action;—the plaintiff, who was the wife during his lifetime of Ludvig Krumenacker and who is the plaintiff in this case; the other Magdalena Krumenacker is the surviving widow of Ludvig Krumenacker's brother.

The respondent, Magdalena Krumenacker, and Ludvig Krumenacker, were intermarried in Austria-Hungary in the year 1887. They lived in said country for some years as husband and wife, and to that union one child was born, which died in infancy. The deceased while living in said country abused the respondent and beat her, and for such was sentenced to and did serve seven months in prison in Austria-Hungary. After being released from such prison he never returned to live with the respondent, and in the year 1900 came to the United States of America, established his residence in Stark county, North Dakota, about the year 1900, and continued to reside there until April 5, 1914, at which time his death occurred in Stark county, and while a resident thereof. The respondent has always resided in Austria-Hungary, and has never been a resident of Stark county, North Dakota, nor of the state of North Dakota.

The deceased left no property except that which was in Stark county, North Dakota, the amount of which is disclosed by the inventory. After the payment of all funeral expenses and the expenses of the last illness, there remained in the hands of the executor unexpended property of the value of $2,000.

In 1910 Ludvig Krumenacker brought an action in the district court of Stark county for a divorce from his wife, Magdalena Krumenacker, on the ground of desertion, and the decree of divorce was granted. In 1911, at Dickinson, North Dakota, he married his then housekeeper, Margaret Schummer, and they lived together as husband and wife until she died in 1913. To the marriage of Ludvig Krumenacker and Magdalena Krumenacker there was never any other issue except the child to which we have before referred, which died in infancy.

Ludvig Krumenacker died testate, and by the terms of his will all of his property is given to other persons than the respondent. The beneficiaries under the will are his brother's widow, whose name is also Magdalena Krumenacker, and her grand-children, who are residuary legatees, the Stecher children, all of whom are minors and orphans and residents of Stark county, North Dakota.

While the will was in process of being probated and the estate was in the course of administration, the respondent, by attorney, filed a petition in the county court of Stark county, claiming that she was the widow of the decedent, and setting forth that no provision had been made for her by the will, demanding a certain house and lot for a homestead, and $1,500 in personal property exemptions under § 8725 of the Compiled Laws of 1913, and a family allowance. The executor and two of the defendants answered, denying her right to the homestead and other exemptions, and set up a certain decree of divorce, and the further fact that the plaintiff was a nonresident, who had not maintained any family relation with the decedent for twenty years or more. The matter came on for hearing in the county court of Stark county, the county court denying the plaintiff and respondent any right to exemptions. Plaintiff appealed to the district court of Stark county, and trial was had therein December 30, 1915. The district court found the decree of divorce to be null and void and open to collateral attack, denied the plaintiff and respondent's right to the homestead, but held that she was entitled to the exemption of $1,500 in personal property. A motion was made by the defendants for a new trial, which was denied.

The first legal question presented to us is, Was there a valid decree of divorce granted Ludvig Krumenacker from Magdalena Krumenacker? The divorce action was commenced in the year 1910. The only service of the summons in the divorce proceedings was by publication. No claim is made of any personal service, and the validity of the divorce decree depends upon the validity of the constructive service of the summons.

Section 7428 of the Compiled Laws of 1913 and its subdivisions provides the things necessary to be done to procure the service of a summons by publication. It reads as follows: "Service of the summons in an action may be made on any defendant by publication thereof upon filing a verified complaint therein with the clerk of the district court of the county in which the action is commenced, setting forth a cause of action in favor of the plaintiff and against the defendant, and also filing an affidavit stating the place of defendant's residence, if known to the affiant, and if not known, stating that fact, and further stating:

"That the defendant is not a resident of this state; or . . . that personal service cannot be made on such defendant within this state to

the best knowledge, information and belief of the person making such affidavit, and in cases arising under this subdivision the affidavit shall be accompanied by the return of the sheriff of the county in which the action is brought, stating that after diligent inquiry for the purpose of serving such summons he is unable to make personal service thereof upon such defendant. The affidavit shall also state . . . that the action is for divorce or for a decree annulling a marriage."

The following is the affidavit made as a basis for the publication of such summons:

"Ludvig Krumenacker, Sr., on being first duly sworn, deposes and says that he is the plaintiff in the above-entitled action; that the defendant, Magdalena Krumenacker, is not a resident of the state of North Dakota, and for that reason it will be impossible to get personal service on the defendant in the above-entitled action; *that the present whereabouts of this defendant are unknown to your affiant.* Affiant further states that this action is one for divorce."

The main question presented concerning this affidavit is whether or not it is sufficient compliance with § 7428 of the Compiled Laws of 1913, which provides that the affidavit for publication shall state the place of defendant's residence, if known to the affiant, and, if not known, stating that fact.

We are quite clear that the term "whereabouts" is in no manner synonymous with the place of defendant's residence. These expressions have not the same meaning. The term "whereabouts" as defined by Webster means the place where a person or thing is. It is clear that a person might be in a place or in many different places at different times without that place being his residence. Residence means the place where a person resides or stays with some degree of permanency. As defined by Webster, "the act or fact of residing, abiding, or dwelling in a place for some continuance of time;" "the place where one resides;" "an abode;" "a dwelling or habitation, especially a settled or permanent home or domicil;" "the place where anything rests permanently."

It is clear from these definitions that there is really nothing synonymous between the terms "resident" and "whereabouts." A person may be in a place or different places, any or all of which may be referred to as his "whereabouts," but none of which is his "residence." His

residence may be a great distance from the places we have referred to. It might be in a different city or a different state, and a long distance removed from the places which may be referred to as his "whereabouts." The term "whereabouts" implies a kind of nomadic quality. It to some extent implies a wanderer from place to place, while, on the other hand, residence implies permanency, and brings to our mind the abiding place for a continuance of time. The word "whereabouts" having a clearly different significance to the word "residence," it is not synonymous with it, and is not interchangeable therewith in use or meaning. As used in the affidavit under consideration in this case in place of the word "residence" it is wholly inadequate. This is especially true in view of the provisions of law which require the residence to be stated, if known, and, if not known, that fact also to be stated. The word "whereabouts" in no manner complies with the requirements of such law, and the affidavit is for that reason fatally defective. The law also requires the affidavit to be filed before the first publication of the summons. The affidavit in question was not filed until some time after the first publication of the summons. This omission is also fatally defective. These two matters are the basis of the jurisdiction to be required. Where the affidavit and the filing thereof are not in accordance with the law, and are fatally defective, the court acquires no jurisdiction, and for these reasons the court acquired no jurisdiction, and therefore the decree of the court is invalid, void, and of no force and effect.

The following cases are largely in point: Jablonski v. Piesik, 30 N. D. 543, 153 N. W. 274; Roberts v. Enderlin Invest. Co. 21 N. D. 594, 132 N. W. 145; Black, Judgm. 2d ed. § 232; Boswell v. Otis, 9 How. 336, 350, 13 L. ed. 164, 170; Braley v. Seaman, 30 Cal. 611; Barber v. Morris, 37 Minn. 194, 5 Am. St. Rep. 836, 33 N. W. 559.

The affidavit for publication and the proof of service and filing thereof are part of the judgment roll under § 7688, Compiled Laws of 1913. It is a rule well settled that, where the judgment roll discloses that no service was had, the judgment is void, and may be impeached directly or collaterally. Black, Judgm. 2d ed. §§ 246, 263, pp. 366, 396; O'Malley v. Fricke, 104 Wis. 280, 80 N. W. 436; Carter v. Frahm, 31 S. D. 379, 141 N. W. 370; Boyle v. Ora Plata Min. & Mill. Co. 14 Ariz. 484, 131 Pac. 155; Empire Ranch & Cattle Co. v. Coleman, 23 Colo. App. 351, 129 Pac. 522; Empire Ranch & Cattle Co. v. Gibson,

23 Colo. App. 344, 129 Pac. 520; Empire Ranch & Cattle Co. v. Coldren, 51 Colo. 115, 117 Pac. 1005; Aldrich v. Steen, 71 Neb. 33, 98 N. W. 445, 100 N. W. 311; Chicago, B. & Q. R. Co. v. Hitchcock County, 60 Neb. 722, 84 N. W. 97; Kahn v. Matthai, 115 Cal. 689, 47 Pac. 698; Parsons v. Weis, 144 Cal. 410, 77 Pac. 1007; Galpin v. Page, 18 Wall. 360, 21 L. ed. 959; Vandervort v. Finnell, 96 Neb. 515, 148 N. W. 332; Lougee v. Beeney, 22 Colo. App. 603, 126 Pac. 1102; Munson v. Pawnee Cattle Co. 53 Colo. 337, 126 Pac. 275; Empire Ranch & Cattle Co. v. Irwin, 23 Colo. App. 206, 128 Pac. 867; Hembree v. McFarland, 55 Wash. 605, 104 Pac. 837; Fogg v. Ellis, 61 Neb. 829, 86 N. W. 494; Hanover v. Turner, 14 Mass. 227, 7 Am. Dec. 203; Brown v. St. Paul & N. P. R. Co. 38 Minn. 506, 38 N. W. 698; Grover & B. Sewing Mach. Co. v. Radcliffe, 137 U. S. 287, 34 L. ed. 670, 11 Sup. Ct. Rep. 92.

The next question to be considered in this case is the construction to be accorded to § 8725, Compiled Laws of 1913. § 8725 is as follows: "Exempt Personal Property, disposition of. There shall also be set apart absolutely to the surviving wife or husband, or minor children all the personal property of the testator or intestate which would be exempt from execution, if he were living, including all property absolutely exempt, and other property selected by the person or persons entitled thereto to the amount in value of $1,500 according to the appraisement, and such property shall not be liable for any prior debt of the decedent except the necessary charges of his last sickness and funeral—and expenses of the administration, when there are no other assets available for the payment of such charges."

Section 8727 is as follows: "Allowance for the family. If the amount so set apart is insufficient for the support of the widow and children or either—and there is other estate of the decedent, the court may in its discretion order such reasonable allowance out of the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate, which, in case of an insolvent estate must not be longer than one year after granting letters testamentary or of administration."

We have no hesitancy in interpreting the sections just referred to as part of the exemption law. The exemption laws are of local application and apply to the residents of this state.

They are primarily intended for the protection of the home, as well as for the protection of the state itself. The state is interested in protecting the home, and in throwing safeguards about it. In setting aside part of the property of which the decedent died possessed, for the use and benefit of his widow and minor children, exclusive of any claim of creditors and others, in order that such widow and children may be protected and provided for, and may not become public charges to the state. Death is a tragedy. The death of the head of the family, or the father, tends to throw the family into commotion and bewilderment. The father, the head of the family, has been the bread winner and financier, and quite frequently the widow has never had any experience in looking after the business affairs, and the minor children of course have no capacity to do so. Quite frequently the father may be indebted and have numerous creditors. Creditors, or some of them, are ofttimes inconsiderate. They have no thought of the future welfare of the family, thus ofttimes without warning thrown on their own resources. In such case it is easy to see that, if no protection was afforded and thrown about the surviving members of the family, and possibly the pressing and insistence of the creditors for the payment of the debts due them coming at a time when the surviving members of the family are most greatly depressed, and the condition of the business of the deceased may be in a chaotic state, many such families would be wrecked, and the surviving members of such family or home be caused much suffering, anguish, and uncertainty of mind, or much inconvenience in procuring the necessities of life, and possibly be thrown on the state for actual support. The state, therefore, in order to protect such family and itself against such conditions, and being also deeply interested in the development of the surviving members of the family, for the family, the home, is the source from which its future citizens are recruited, it throws about such family at such time the arm of its protection, and says to all creditors or those having claims against the estate,—this much of all the property that was left shall be set aside for the protection of the surviving widow and minor children. This much shall be exempt. There is exempt to the surviving widow and minor children under our law out of all the property left, and which was not encumbered by the deceased wife or husband, first, the same amount as could have been claimed by the hus-

band during his lifetime as exempt from execution; to wit, the sum of $500. In addition thereto, the absolute exemption provided by law; and, further, additional property to the extent and of the value of $1,500,—all of which shall be exempt from any debt owing by the deceased. In addition to this, if these are insufficient for the support of the widow and children, and there is other estate, the court in its discretion may make additional allowances, provided that in an insolvent estate such additional allowances shall not be for more than one year.

In these exemption statutes, aliens are not mentioned and are not recognized; and such exemption statutes were never intended to apply to nonresident aliens who never have, and never do, intend to become residents of our state, and who never have, and never intend to have, and maintain their home in our state, and who owe no duty to the state, and to whom the state owes no duty.

It is true that aliens can purchase and sell, and take by will, donation, succession, or distribution, which rights are protected under treaty arrangements between the various nations, but exemptions are matters which are entirely foreign to the intent and purpose for which treaties are executed.

The plain intent of the exemption laws is for the protection of the home and the family, of residents within the state, and the surviving widow and minor children thereof. There is no home or family within the meaning of the exemption laws, if the father or head of the family lives permanently in North Dakota, and the wife or mother lives permanently in Austria-Hungary, or other foreign nation, or in another of our states, with no intention, or circumstances indicating an intention, to ever become a resident of our state, or become a member of the home of one who is a resident of our state. The law contemplates a family living together and existing as a family.

The exemption laws are always liberally construed, and there might exist circumstances where the husband lived within our state and the wife for the time being was a resident of a foreign nation or a resident of a sister state, where, notwithstanding that fact, they could, with propriety and with some degree of legality, lay claim to such exemptions. For instance, had the husband left Austria-Hungary for the United States, and come to North Dakota with the purpose of establishing a permanent residence and home, and with the understanding

with his wife before he left—it being assumed for the purpose of this illustration that the husband is poor,—that as soon as he was able to earn enough money to send for his wife he would do so, and that intention was present with both the parties in good faith at all times; and if there were correspondence between them which showed that it was the intention of both that the wife should follow the husband as soon as the husband could send for her, or as soon as she could by any means reasonable make the trip to join her husband; or it was shown that she had fallen sick and was unable physically to make the trip, yet always had the desire and intention of doing so as soon as she became physically able,—in such case, with the liberal construction given to the exemption laws, such person might be granted exemptions. It is no fault of hers in such case that she cannot be with her husband. She desires to be, she always intends to be, and the domicil of her husband as a general rule of law being that of the wife, and intent being at the very foundation of residence, such good intention, with the good faith otherwise shown, may be sufficient for the law to say that her real residence is in fact with her husband, though she be physically absent therefrom. This same reasoning would apply to the husband coming from a sister state under similar circumstances and conditions. If there is a good and sufficient reason why the wife is not with her husband which is based upon good faith, and is coupled with an intent and desire on the part of the wife to join her husband at the first opportunity, or as soon as it is possible, whatever the cause may be which prevents her joining him, then in such case by reason of the liberality of the construction of the exemption laws, the construction thereof may be extended to include cases of this kind. On the other hand, where testimony shows that an alien wife whose husband has come to this country and established a home in one of the states has always maintained her residence in the foreign land or nation, has always maintained her allegiance to the authority of such foreign state, who never has intended or expressed any intention, or given any evidence of an intention, to become a resident of the state in which her husband has established his home, has never expressed any desire to renew the family relations or again make the home complete by joining her husband in his home, or expressing any desire or intention to do so, she can have no benefit of the exemption laws of this state, and the exemption laws were not meant to include

such persons. The most liberal construction that can be placed upon the exemption laws is, they are for the benefit and protection of the residents, the family, and home of residents within this state, or at the very farthest, those who have a present intention in good faith to become residents of the state and members of the family or home of some person who is a resident of, and who has his home within our state.

It is conceded in respondent's statement of facts that she is not now, and never was, a resident of said county (Stark county) or of this state, but since birth has been, and now is, a resident of Austria-Hungary, Europe. And it must therefore be conceded, from these facts and from the whole record, that she never had any intention of becoming a resident of Stark county, North Dakota. This being true, she is not entitled to personal property to the value of $1,500, nor any other amount, as an exemption.

The question now under consideration turns largely upon whether we consider the statute under consideration one of exemption or of inheritance. Respondent's theory really is that the statute in question is a statute of inheritance, and cites some authorities which tend to sustain this position. Others are not in point. One of the cases cited by respondent is the Grieve's Estate, 165 Pa. 126, 30 Atl. 727. This decision is quite an important one, but we believe is rather against the position taken by the respondent, and is in harmony with the position which we have taken; that is, that the statute is one of exemption, and not of inheritance. The syllabus in the Grieve's Case is as follows: "Where a husband leaves his wife in a foreign country with the understanding that she is to follow him when he shall have made a home for her in this country, and he subsequently settles in Pennsylvania but does not inform his wife of his whereabouts, and afterwards bigamously marries another woman, and then dies, the first wife is entitled to the widow's exemption out of his estate, if it appears that she was always willing to join her husband and would have done so if she had not been kept in ignorance of his whereabouts."

In this case there was, not only an agreement that the wife would follow and live with her husband in his new home, but a reading of the case discloses that she always had a desire and intention to do so, and was only prevented from doing so by reason of ignorance of his whereabouts. When we take into consideration that a person's residence

depends, to a considerable extent at least upon the intention, we have no hesitancy in agreeing with the reasoning in the Grieve's Case, when all the facts in the case are fully considered. The Grieve's Case is really an authority in point to prove the principle which we believe is the proper one; that is, that the statute is one of exemption. The Grieve's Case in fact holds that the statute is one of exemption and the widow· had brought herself within its terms. There is much authority also for the position which we have taken. The following authorities cited by the appellant in his brief sustains the proposition that the statute is one of exemption: Ex parte Pearson, 76 Ala. 521; Allen v. Manasse, 4 Ala. 554; Coates's Estate, 12 Phila. 171; Spier's Appeal, 26 Pa. 233; Platt's Appeal, 80 Pa. 501; Monk's Estate, 9 Montg. Co. L. Rep. 113; Auerbach v. Pritchett, 58 Ala. 451; Talmadge v. Talmadge, 66 Ala. 199; Shannon v. White, 109 Mass. 146; Barber v. Ellis, 68 Miss. 172, 8 So. 390; Richardson v. Lewis, 21 Mo. App. 531; Re Rose, 158 Cal. 428, 111 Pac. 258; Austin's Estate, 73 Mo. App. 61; Hascall v. Haffard, 107 Tenn. 355, 89 Am. St. Rep. 952, 65 S. W. 423; Daniels v. Taylor, 76 C. C. A. 139, 145 Fed. 169, 7 Ann. Cas. 352; Alston v. Ulman, 39 Tex. 158; Smith v. Howard, 86 Me. 203, 41 Am. St. Rep. 537, 29 Atl. 1008; Medley v. Dunlap, 90 N. C. 527; Graham v. Stull, 92 Tenn. 673, 22 S. W. 738, and note in 21 L.R.A. 241.

We are clear that the statute under consideration, § 8725, Compiled Laws of 1913, is an exemption statute, and not a statute of inheritance. There being, therefore, no exemptions of which the respondent could claim the benefit, the disposition of the property in question by will cannot be questioned; the will never having been set aside, and is in full force and effect.

The judgment of the lower court is reversed, and the case is remanded for a new trial, each party to pay their own costs in the lower court and in this court.

CHRISTIANSON, J. (concurring specially). I concur fully in the conclusions reached in the opinion prepared by Mr. Justice Grace, for the reasons stated in that part of his opinion covered by paragraph 2, of the syllabus. I am not prepared, however, to say that the use of the word "whereabouts," instead of the word "residence," in an affidavit

for publication of a summons, renders void such affidavit and a judgment based upon service made thereunder, and I express no opinion upon that question.

In connection with what is said by Mr. Justice Grace with respect to § 8725, Comp. Laws 1913, it may be observed that the policy of allowing exemptions to heads of families while living, and to a surviving wife, husband, or minor children was in force even before statehood. See §§ 322–334, Code Civ. Proc. 1877; § 135, Probate Code 1877. The desirability of enacting "wholesome laws exempting from forced sale to all heads of families a homestead, . . . and a reasonable amount of personal property," was recognized and declared by the framers of our state Constitution. N. D. Const. § 208. The constitutional policy thus declared was carried out by appropriate enactments by the legislature. Comp. Laws 1913, §§ 5605, 5623, 7729–7742. It will be noted that both the homestead and personal property exemptions thus allowed to heads of families are distinctly limited to residents of the state. These exemptions, while allowed to and claimed by the heads of families, are intended primarily for the benefit of the families. Calmer v. Calmer, 15 N. D. 120, 127, 106 N. W. 684. And in event the head of the family fails to claim the exemption it may be claimed by his wife or by a child over the age of sixteen years. Comp. Laws 1913, § 7736. At the time § 8725, Comp. Laws 1913, was enacted, it allowed to the surviving husband, wife, or minor children the same additional exemptions as those then allowed to the head of the family during his lifetime. This section in its original form came before this court for construction in the early history of the state in the case of Fore v. Fore, 2 N. D. 260, 50 N. W. 712. And while the specific question here presented was not there involved, the entire opinion and reasoning adopted by the court therein is clearly to the effect that this is an exemption statute. This is, also, true of the decision in Woods v. Teeson, 31 N. D. 610, 154 N. W. 797. And statutes of this character have generally been classed as exemption laws by courts and legal writers. 18 Cyc. 1401. In construing a somewhat similar statute, the supreme court of Mississippi said that it "must be held to be a part of our exemption laws, and applicable only to persons residing within our borders." Barber v. Ellis, 68 Miss. 172, 8 So. 390. The supreme court of Pennsylvania held that a statute allowing widow's exemptions

does not apply to a widow who, upon the emigration of her husband to this country, five years before his death, had remained behind, and had never joined him in this country although she had promised to do so. Spier's Appeal, 26 Pa. 233. See also Medley v. Dunlap, 90 N. C. 527.

In the case at bar plaintiff, in her petition to the county court, claimed both a homestead exemption and the exemption allowed by § 8725, supra. The county court disallowed both claims, and an appeal was taken to the district court, which affirmed the order appealed from. Plaintiff did not appeal from the disallowance of the homestead exemption, and has apparently abandoned all claim thereto.

Section 8725 is part of article 3 of chapter 6 of the 1913 Probate Code. The first two sections of the article relate to the homestead exemption. Section 8723 provides that "upon the death of either husband or wife the survivor . . . may continue to possess and occupy the whole homestead, and upon the death of both husband and wife the children may continue to possess and occupy the same until otherwise disposed of according to law." Section 8724 provides for setting apart of the homestead. The first words of § 8725 (the one involved in this proceeding) are as follows: "There shall *also* be set apart absolutely to the surviving widow," etc. The word "also" in this section clearly refers to the preceding sections, and means that the personal property exemption therein mentioned shall be "in addition to" the homestead exemption provided for in the preceding sections. Hill v. Terrell, 123 Ga. 49, 51 S. E. 86; Loring v. Hayes, 86 Me. 351, 29 Atl. 1098; Mace v. Mace, 95 Me. 283, 49 Atl. 1038.

It seems to me that the legislature intended that the personal property exemption provided for in the last section should be allowed only to such person or persons as might, under the preceding sections, claim and receive the homestead exemption.

The exemption allowed to heads of families is distinctly limited to residents of this state. Comp. Laws 1913, §§ 5623, 7742. The homestead exemption can attach only to such property as constituted decedent's homestead at the time of his death. Calmer v. Calmer, 15 N. D. 120, 125, 106 N. W. 684. If the decedent is not entitled to claim a homestead exemption at the time of his death, no homestead estate survives or descends. Holcomb v. Holcomb, 18 N. D. 561, 120 N. W. 547, 21 Ann. Cas. 1145. The immunity given to heads of

families is founded upon the idea that the exempt property is necessary to support the debtor and his family. It is not intended exclusively for the benefit of the owner of the property, but mainly for the benefit of the family for which he provides. 18 Cyc. 1374; Calmer v. Calmer, 15 N. D. 120, 122, 106 N. W. 684.

The purpose of the legislature in the enactment of the section here under consideration and the preceding sections was to continue the exemption for the benefit of the family after the death of the owner. Fore v. Fore, 2 N. D. 260, 263, 267, 50 N. W. 712; Calmer v. Calmer, 15 N. D. 120, 127, 106 N. W. 684. And in order to provide for all cases the language was made broad enough to include not only the usual cases in which the property belongs to the husband, but also the more or less unusual cases where the property belongs to the wife.

If it is true, as contended by respondent's counsel and by the minority members of this court, that § 8725 is not an exemption statute, but a statute of distribution, then manifestly its provisions would apply to all estates, those of nonresidents as well as of residents. If the contention of the respondent and the minority members is correct, then the plaintiff would have been entitled to claim and receive the exemption now claimed, even though she and the deceased had both been residents of Austria, and even though neither of them had ever been within the United States of America. Such construction, it seems to me, is not in accord with the legislative intent, and applies the statute for a purpose never intended.

While it has been said to be "apparent that the legislature, in making the provision, were contemplating the ordinary case where the parties to the marriage relation have lived together till death severed the tie, and where the widow remains in charge of the family of the deceased" (Kersey v. Bailey, 52 Me. 200), the courts have generally held that a deserted wife is entitled to claim the exemption in the state where her husband has maintained his residence, even though she has not been an actual resident of the state. These cases are based upon and give effect to the presumption that the marriage relation continued, and that the domicil of the husband is, also, the domicil of the wife. The presumption of continuance of marriage relation and identity of domicil of husband and wife cannot prevail, however, when the facts are shown to be to the contrary. Comp. Laws 1913, § 14; McGrew v. Mutual

L. Ins. Co. 132 Cal. 85, 84 Am. St. Rep. 27, 64 Pac. 103. This is not a case where the husband surreptitiously deserted and abandoned his family which the wife has continued to maintain and support; in effect maintaining the family relation and bearing the burdens incident thereto. Nor is it shown that she has been prevented from residing with her husband by reason of his wrongful or illegal acts. The evidence here shows that the plaintiff owned some land in Austria-Hungary; that she and her husband separated and lived apart for some time before he emigrated to this country; that a divorce could not be had under the laws of Austria-Hungary under the existing circumstances; that when the deceased left Austria-Hungary and came to this country the plaintiff had no desire or intent to accompany him or to follow him at any time afterwards. So far as the family relation was concerned it was for all intents and purposes actually and finally terminated, and neither party apparently had the slightest intent of ever resuming it.

Under these circumstances I do not believe that the plaintiff is entitled to claim or receive the benefits conferred by § 8725, supra. In my opinion the legislature intended that this section should apply only to the estates of decedents who were residents of this state, and that its benefits should accrue only to those who were either actual residents, or those who within the contemplation of the law may be deemed to be such.

BRUCE, Ch. J. (dissenting). I agree with the majority that the divorce proceedings were a nullity. Jablonski v. Piesik, 30 N. D. 543, 153 N. W. 274; Atwood v. Tucker (Atwood v. Roan) 26 N. D. 622, 51 L.R.A.(N.S.) 597, 145 N. W. 587; Dallas v. Luster, 27 N. D. 450, 147 N. W. 95.

I do not, however, agree with the majority that §§ 8725 and 8727 of the Compiled Laws of 1913 are exemption statutes.

Section 8725 provides that: "There shall also be set apart absolutely to the surviving wife or husband or minor children all the personal property of the testator or intestate which would be exempt from execution, if he were living."

Section 8727 provides: "If the amount so set apart is insufficient for the support of the widow and children or either and there is other estate of the decedent, the court may in its discretion order such rea-

sonable allowance out of the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate," etc.

It is unquestionably true that at the common law no exemptions existed. 12 Am. & Eng. Enc. Law, 67. This is also generally true of the right to inherit. See Strauss v. State, 36 N. D. 594, L.R.A. 1917E, 909, 162 N. W. 908; Moody v. Hagen, 36 N. D. 471, L.R.A. —, —, 162 N. W. 704; Johnson v. Olson, 92 Kan. 819, L.R.A.1915E, 327, 142 Pac. 256. It is also true that the allowance paid to the wife and family of a deceased person are purely of statutory origin. 2 Am. & Eng. Enc. Law, 156. Do, then, §§ 8725 and 8727 of the Compiled Laws of 1913 include and contemplate nonresident aliens whose husbands have lived within the United States for fifteen years, but who themselves, during all of that time, have lived separate and apart from their husbands and in a foreign country, and who have no children? I think they do.

The statute says nothing about residents or nonresidents, alienage or nonalienage, abandonment or nonabandonment. Section 8725 simply provides that "there shall be set apart absolutely to the surviving wife or husband, etc."

It is in my opinion, and strictly speaking, a statute of succession or inheritance and distribution, rather than a statute of exemptions. See Farmers State Bank v. Smith, 36 N. D. 225, 162 N. W. 302; Farris v. Battle, 80 Ga. 187, 7 S. E. 262. It must be construed in connection with § 5729, Comp. Laws 1913, which provides that "aliens may take in all cases by succession as well as citizens." It should also be considered in connection with the treaty of 1848 between the United States and Austria-Hungary, which provides that:

"Article 1: The citizens or subjects of each of the contracting parties shall have power to dispose of their personal property within the states of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other contracting party, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the inhabitants of the country, where the said property lies, shall be liable to pay in like cases." See [9 Stat. at L. 944] 7 Fed. Stat. Anno. 417.

War not having yet been declared with Austria-Hungary, this treaty is still operative.

The language of the act is clear, and there can be no doubt of its meaning. Sammons v. Higbie, 103 Minn. 448, 115 N. W. 265; Mowser v. Mowser, 87 Mo. 437; Slack v. Slack, 123 Mass. 443; Welch v. Welch, 181 Mass. 37, 62 N. E. 982; Kellogg v. Graves, 5 Ind. 509; Singleton v. McQuerry, 8 Ky. L. Rep. 782; Mitcham v. Moore, 73 Ala. 542; Stromberg v. Stromberg, 119 Minn. 325, 138 N. W. 428; Grieve's Estate, 165 Pa. 126, 30 Atl. 727; Comerford v. Coulter, 82 Mo. App. 362. See also as to right generally Woods v. Teeson, 31 N. D. 610, 154 N. W. 797.

Nor is there, in my opinion, any merit in the contention that nonresidence or alienage precludes the plaintiff and respondent from taking, under § 8727, Compiled Laws of 1913, which provides that "if the amount so set apart is insufficient for the support of the widow and children or either, and there is other estate of the decedent, the court may in its discretion order such reasonable allowance out of the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate, which in case of an insolvent estate must not be longer than one year after the granting letters testamentary or of administration."

As was said by the supreme court of Georgia in Farris v. Battle, supra: "In the view we take of the law, the provision for year's support is *a branch of the Statute of Distributions,* and the persons entitled to it are just as much and as absolutely entitled as they are in case of intestacy to a distributive share of the residue after the year's support is deducted and all debts are paid. It is a branch of the Statute of Distributions, and prescribes how the estate of a deceased person to this extent is to be disposed of. Creditors are left out, and adult children are left out, until this much of the estate is withdrawn from it. Then they are admitted for participation in the balance. *They have no right to anything except by the Statute of Distributions. To take at all, they must look to the law, and must take according to law.* This being so, we consider that the special provision applicable to the widow and minor children gives them this much advantage over other distributees. It makes their part of the estate that much more, and they take it as absolutely and unconditionally, and for as long a time, as distributees

take under the general provisions of the statute. It requires nothing to give a right to this benefit, except the relation of wife or minor child. When that relation exists at the time of the death, the person or persons sustaining it are entitled to make their claim under the terms of the statute." See also Farmers State Bank v. Smith, 36 N. D. 225, 162 N. W. 302; Banse v. Muhme, 13 Ohio C. C. 501, 7 Ohio C. D. 224.

I have carefully examined the cases cited by counsel for appellant. In nearly all of them, however, the court was either dealing with the discretion of the trial judge in refusing to award an extra allowance, or the court erroneously treated the right as a right of exemptions rather than of inheritance (see Ex parte Pearson, 76 Ala. 521; Allen v. Manasse, 4 Ala. 555; Barber v. Ellis, 68 Miss. 172, 8 So. 390; Emmett v. Emmett, 14 Lea, 370); or there was no constitutional or statutory provision such as ours entitling the alien to inherit, or the right involved was a homestead right, where a home and a residence was essential to the claim (see Alston v. Ulman, 39 Tex. 158; Stanton v. Hitchcock, 64 Mich. 326, 8 Am. St. Rep. 821, 31 N. W. 395); or the estate of a nonresident, as well as the claim of a nonresident, was involved and the statute therefore held not applicable. See Smith v. Howard, 86 Me. 205, 41 Am. St. Rep. 537, 29 Atl. 1008; Hascall v. Hafford, 107 Tenn. 355, 89 Am. St. Rep. 952, 65 S. W. 423; Graham v. Stull, 92 Tenn. 673, 21 L.R.A. 241, 22 S. W. 738; Farris v. Sipes, 99 Tenn. 298, 41 S. W. 443; Shannon v. White, 109 Mass. 146; Richardson v. Lewis, 21 Mo. App. 531.

I cannot, it is true, so distinguish the Pennsylvania cases of Spier's Appeal, 26 Pa. 233; Hettrick v. Hettrick, 55 Pa. 290; Odiorne's Appeal, 54 Pa. 175, 93 Am. Dec. 683. These cases, however, I believe are hardly in the line of authority, and seem to consider the matter in the light of a claim to an allowance to the poor rather than a right of succession or inheritance, and no reference is made therein to any statutory enactment which allowed the alien to inherit.

I am also not unaware of the case of Tromsdahl v. Beaton, 27 N. D. 441, 52 L.R.A.(N.S.) 746, 146 N. W. 878. In this case, however, there was involved the right merely of a nonresident wife on an alleged homestead as against a mortgagee; the wife not having joined in the execution of the mortgage. The wife had never at any time made her home upon the land, nor did it appear that she was in the country at the time

of the execution of the mortgage. The husband also had left the land soon after the mortgage was executed.

There is also, in my opinion, no merit in the contention that appellant's motion for a new trial was wrongly denied. No diligence was shown to produce the newly discovered evidence, and, above all, there is no reason to believe that a new trial would change the result in any way. All that it would tend to show, at the most, would be that the appellant was not without fault, and that her husband had not illtreated her while in Hungary. This would not negative the fact that she was still his wife, and, if she was his wife at the time of his decease, she was entitled to recover.

Nor is there any merit in the contention that improper evidence was admitted in regard to the character of the deceased. The question at issue is really a question of law. It was whether a divorce had been had or not been had, or whether the petitioner was the wife of the deceased at the time of his death. The evidence on the other matters could have had no effect upon the judgment.

For these reasons I am of the opinion that the judgment of the district court should be affirmed.

ROBINSON, J. (dissenting). The plaintiff is the surviving widow of Ludvig Krumenacker, who died leaving personal property amounting to $2,500. The defendants appeal from a judgment pursuant to the statute giving the widow of a deceased husband an allowance of $1,500 from his personal property. It is contended that the widow should not have any allowance because she was not a resident of the state.

In Austria-Hungary, the deceased cruelly beat, deserted, and abandoned the plaintiff. She did not follow him up and insist on living with him. Hence, it is claimed that the wrongs which he did to her in his lifetime should be rounded out by denying to her any share in his estate. Her claim is based on this statute,—Compiled Laws, § 8725: There shall also be set apart absolutely to the surviving wife or husband or minor children all the personal property of the testator or intestate which would be exempt from execution, if he were living, including all property absolutely exempt and other property selected by the person or persons entitled thereto to the amount in value of $1,500. The statute does not provide that the surviving widow must be a

resident of the state or the head of a family, or that it must be her intention to become a resident of the state. It is quite immaterial as to whether the statute be classified as one of exemption or of inheritance. In either case a person who comes within the letter of the statute is entitled to its benefits. The husband died leaving personal property in excess of $1,500. The plaintiff is his surviving wife. Hence, she is entitled to the $1,500. It is her inheritance.

An exemption statute applies to property which belongs to a party and exempts it from legal process. An inheritance statute gives to a party property not belonging to him. It gives him title by descent. It may be the legislature was wrong in not limiting the inheritance of surviving widows to residents of the state, or to persons having a mind to become a resident, but it is not for the courts to make any such limitations. It cannot be done without judicial legislation.